**CITY OF SCRANTON, Appellant**

v.

**E. B. JERMYN LODGE NO. 2 OF the FRATERNAL ORDER OF POLICE.**

Commonwealth Court of Pennsylvania.

Argued June 7, 2006.

Decided July 20, 2006.

Richard M. Goldberg, Kingston, for appellant.

Stephen J. Holroyd, Philadelphia, for appellee.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, and SIMPSON, Judge.

OPINION BY Judge PELLEGRINI.

The City of Scranton (City) appeals an order of the Court of Common Pleas of Lackawanna County (trial court) denying its petition to review and vacate the arbitration award for E.B. Jermyn Lodge No. 2 of the Fraternal Order of Police (FOP) because the Arbitrator did not exceed his power and the award did not violate, expand or diminish any provision of the Revised Recovery Plan as the Strategic Implementation Team Agreement (SIT Agreement) and Collective Bargaining Agreement (CBA) were in place at the time the Revised Recovery Plan was adopted.

The City was designated a financially distressed municipality in 1992 pursuant to the Municipalities Financial Recovery Act (Act 47).[1] The City adopted an initial Recovery Plan, and the Commonwealth designated the Pennsylvania Economy League (PEL) to serve as Plan Coordinator for the City.[2] During the 1993 negotiations for a CBA, a Strategic Implementation Team (SIT) was organized to professionalize and restructure the City's police department and to develop an implementation plan that balanced the City's financial needs, safety of the citizenry, effective operation of the police department, and safety of the police officers. Following negotiations, the implementation plan was reduced to an SIT Agreement, which was then incorporated into the CBA. According to the SIT Agreement, the manning compliment was reduced from a minimum of 156 to 140 police officers, and, in return, the City agreed to add 11 clerical positions (SIT clerks) to assist the police officers in completing forms and other paperwork.[3]

---

1. Act of July 10, 1987, P.L. 246, *as amended*, 53 P.S. §§ 11701.101–11701.501.

2. The City continues to be designated as a distressed city.

3. Article XI of the Amended SIT Agreement provides, in pertinent part:

> A. FOP agrees that designated bargaining unit work historically performed by police officers may be performed by civilian employees to be employed by the City.
> B. With the exception of the civilians working directly for the Chief of Police and Deputy Chief, all civilians will be under direct command of Administrative Support Lieutenant.
> C. With the exception of the civilians working directly for the Chief of Police and Deputy Chief, civilian clericals will work in "pool" concept without specific task dedication.
> D. To the extent necessary, additional civilians will be equipped with office equipment and other necessary supplied [sic] from fund, in accordance with the Recovery Plan developed by the PEL and will be phased into operation on a regular periodic basis over the course of the 1995, 1996 and 1997 fiscal years.
> E. Civilians will work two shifts structured to meet the needs of the officers and detectives that they will serve.
> F. Distribution of additional civilian employees within the Police Department as compared to existing complement:
> G. 1. Criminal Information Specialist

| Current | Propose | Add |
| --- | --- | --- |
| 0 | 1 | 1 |

> 2. Clerk/Typist Detective Days

| Current | Propose | Add |
| --- | --- | --- |
| 1 | 1 | 0 |

> 3. Clerk/Typist Detective Evenings

| Current | Propose | Add |
| --- | --- | --- |
| 0 | 1 | 1 |

> 4. Records/Administration

| Current | Propose | Add |
| --- | --- | --- |
| 4 | 6 | 2 |

> 5. Training

| Current | Propose | Add |
| --- | --- | --- |
| 0 | 1 | 1 |

> 6. Deputy Chief/Captains

| Current | Propose | Add |
| --- | --- | --- |
| 0 | 1 | 1 |

This exchange would allow the police officers to spend more time on the streets so as to increase the level of safety that would have been in question due to the reduction in the number of police officers.

The City failed to hire the requisite number of SIT clerks set forth in the SIT Agreement, and the FOP filed a grievance. On January 7, 1997, the Arbitrator determined that the City violated the SIT Agreement by failing to hire six civilians during the fiscal years of 1995 and 1996 and directed the City to comply with the SIT Agreement and hire the requisite number of SIT clerks (Brogan Award). In May of 1999, the SIT Agreement was amended, but the parties agreed that the "staffing" language pertaining to the SIT clerks remained the same.

In November of 2001, Christopher Doherty (Mayor Doherty) was elected Mayor of the City. A Revised Recovery Plan was implemented, publicly passed, and adopted by referendum in November of 2002, which provided:

> 7. *S.I.T. Clerks.* Notwithstanding any prior arbitration award, the City shall have the right to determine the number and type of S.I.T. clerks, and the S.I.T. clerk position which reports directly to the Deputy Chief/Patrol shall be eliminated.[4]

(Revised Recovery Plan, Chapter II–B–7 at 21; Reproduced Record at 59.) In January of 2003, Mayor Doherty directed the elimination of seven SIT clerks and refused to fill an existing vacancy.

The FOP filed a grievance alleging that the City failed to comply with the terms of the expired CBA[5] by eliminating a number of SIT clerk positions listed in Article XI, paragraph G of the Amended SIT Agreement and reassigning those employees within their bargaining unit.[6] Before the Arbitrator, the police officers argued

7. *Desk (2 for 2 shifts)*

|  | Current | Propose | Add |
|---|---|---|---|
|  | 0 | 4 | 4 |

8. Grant Writer

|  | Current | Propose | Add |
|---|---|---|---|
|  | 0 | 1 | 1 |

| Total | Current | Propose | Add |
|---|---|---|---|
|  | 5 | 16 | 11 |

(Amended SIT Agreement, Article XI at 13–14; Reproduced Record at 264.) The parties agreed that the language in Article XI of the Amended SIT Agreement is consistent with the language in Article X of the original SIT Agreement. Only the Amended SIT Agreement was made part of the record before this Court.

4. The Revised Recovery Plan also prohibited the award of "back wages or other retroactive adjustments" as well as "minimum Manning clauses." (Revised Recovery Plan, Chapter II–B–2 and II–B–7; Reproduced Record at 41 and 43.)

5. The CBA's term had expired as it ran from January 1, 1996, to December 31, 2002. However, the expired CBA remains in full force and effect pending negotiations for a successor agreement. The parties are engaged in interest arbitration pursuant to Act 111, Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1–217.10. Act 111 provides generally for collective bargaining between policemen and firemen and their public employers over the terms and conditions of employment and in the event of a bargaining impasse for compulsory and binding arbitration with no right to strike. *Philadelphia Fire Officers Association v. Pennsylvania Labor Relations Board*, 470 Pa. 550, 369 A.2d 259 (1977).

6. The employees whose positions were eliminated are not members of the bargaining unit represented by the FOP in this case. They are members of the clerical union and represented by Local Lodge No. 2462, which is affiliated with District 1 of the International Association of Machinists and Aerospace Workers, AFL–CIO. That union filed no grievance.

that they were given additional responsibilities due to the elimination of a number of SIT clerks. The Arbitrator found that the City simply ignored the language contained in the CBA that incorporated the SIT Agreement by unilaterally reducing the number of mandated SIT clerks. The Arbitrator also found:

> As was aptly and properly put by counsel for the F.O.P., "Everyone in this case readily concedes that there is a[CBA] in effect. Everyone in this case readily concedes that the [CBA] explicitly and unmistakably provides for eleven additional SIT clerks for the duration of the contract. Everyone in this case readily concedes that the City has not complied with this provision." (F.O.P. brief, page 24). Put another way, it is apparent to me that, for whatever reason, the City saw fit to breach that [CBA] and that it was blatant, willful and in total disregard of its responsibilities thereunder. That being so, it is my finding that bad faith did exist, so that the remedy sought by the F.O.P. is appropriate under these unique and special circumstances. I therefore am granting the F.O.P. the full remedy that it seeks.

(Reproduced Record at 76–77.) Finding that Act 47 was not violated because the SIT Agreement was entered into before the Revised Recovery Plan, the Arbitrator determined that the City had violated the CBA and directed the reinstatement of the SIT clerks. In order to make the FOP whole, he also ordered the FOP bargaining unit members that were on the payroll to be paid the full cash value that would have been paid if the additional SIT clerks required by the SIT Agreement had been employed. The City then petitioned the trial court to have this award vacated, contending that the award was illegal, exceeded the powers of the Arbitrator and was not derived from the SIT Agreement.

■ Before the trial court, the City contended that the Arbitrator's award was illegal because it violated Section 252 of Act 47, 53 P.S. § 11701.252,[7] as it was not in accordance with the Revised Recovery Plan. Applying the narrow certiorari test, which is also our scope of review in reviewing Act 111 arbitration, inquiry is limited to four aspects of the arbitrator's award: (1) jurisdiction of the arbitrator; (2) regularity of the proceedings; (3) excess of the arbitrator's powers; or (4) deprivation of constitutional rights,[8] the trial court denied the City's petition for review because the CBA existed prior to the Revised Recovery Plan, finding:

> Although the [CBA] did expire, there is authority that supports the [FOP's] position that its terms continue especially if the parties are engaged in interest arbitration. [Citations Omitted].

> . . .

> [T]his Court finds that the Arbitrator did not exceed his power and the award did not "violate, expand, or diminish any provision of the Plan." The SIT Agreement was in place at the time the Revised Recovery Plan was adopted. The City was aware of its existence as well as the existence of the [Brogan] Award. The City eliminated the SIT positions with full awareness of the potential consequences. (See Transcript, P. 39–41, 60–63).

---

7. 53 P.S. § 11701.252 provides:
   A collective bargaining agreement or arbitration settlement executed after the adoption of a plan shall not in any manner violate, expand or diminish its provisions.

8. *See City of Philadelphia v. Fraternal Order of Police, Lodge No. 5,* 564 Pa. 290, 768 A.2d 291 (2001).

The matter before the arbitrator was a grievance alleging a violation of a[CBA] that pre-dated the enactment of a Revised Recovery Plan. Section 225 of Act 47 has prospective application. The Arbitrator rightfully concluded that Section 225 of Act 47 has no application to the case before him. (Transcript P. 9). The SIT Agreement was in place at the time the Revised Recovery Plan was adopted. The SIT Agreement continued in full force and effect up to the time of the alleged breach.

(Reproduced Record at 22–24.) The trial court further found that the remedy imposed by the Arbitrator was within his applicable jurisdiction, and there was an adequate foundation for an award of attorney's fees due to a finding of willful and blatant conduct. This appeal by the City followed.

■ The City initially contends that the Arbitrator's award was in excess of his powers because pursuant to Act 47, the City cannot comply with the award without violating the Revised Recovery Plan.[9] In

*Wilkinsburg Police Officers Association v. Commonwealth,* 129 Pa.Cmwlth. 47, 564 A.2d 1015, 1021 (1989), we held that "Section 252 of Act 47 in no way affects the application or interpretation of a collective bargaining agreement which is executed *prior to* the adoption of a fiscal recovery plan." Because, here, the Revised Recovery Plan was adopted **after** the CBA and Amended SIT Agreement took effect, the trial court did not err in determining that Act 47 was not violated and that the Arbitrator acted within his powers.

■ Citing *City of Philadelphia, Office of Housing and Community Development v. American Federation of State, County and Municipal Employees, Local Union No.1971,* 583 Pa. 121, 876 A.2d 375 (2005), the City next contends that the Arbitrator's award was in excess of his powers because the award of attorney's fees and back-pay amounted to punitive damages,[10] thereby violating public policy.[11] While our Supreme Court in *City of Philadelphia* held that under the essence test,[12] courts

9. Before the trial court, the City also argued that the CBA's term expired and a new relationship was created, which was less than contractual and, thus, not protected by the United States and Pennsylvania constitutions. That argument was neither raised on appeal to this Court nor was any other issue regarding the effect of the CBA. The grievance was submitted to the Arbitrator under the terms of the CBA.

10. The FOP does not agree that the back-pay award was in any way punitive. In making the award, the Arbitrator did not characterize those damages as punitive, but found only general bad faith on the part of the City from failing to do what it agreed, stating: "Put another way, it is apparent to me that, for whatever reason, the City saw fit to breach that CBA and that it was blatant, willful and in total disregard of its responsibilities thereunder. That being so, it is my finding that bad faith did exist, so that the remedy sought by the F.O.P. is appropriate under these

unique and special circumstances." (Reproduced Record at 76–77.) Moreover, at the beginning of the award in describing the relief the FOP sought, the Arbitrator did not mention a claim for punitive damages. Because of the way we have resolved this issue, we need not address whether they were tantamount to punitive damages.

11. The FOP also contends that the City never raised the issue of the Arbitrator's award being "punitive" before the trial court and, therefore, waived the issue. Because the City argued that the award was contrary to public policy before the Arbitrator and trial court, that argument satisfactorily encompasses an objection to punitive damages and, thus, is not waived.

12. Under this test, an arbitrator's award is final and binding unless the award does not draw its "essence" from the collective bargaining agreement. This exception is called "the essence test," and it is a standard of

could, based on public policy considerations, reverse an arbitrator acting under Act 195 to award punitive damages, that decision is not applicable here because in an arbitration award involving Act 111 bargaining units, the narrow certiorari test, not the essence test, is used to review those awards. This test is much more circumscribed than the essence test. As our Supreme Court has instructed, what is in excess of the arbitrator's powers under that test is not whether the decision is unwise, manifestly unreasonable, burdens the taxpayer, is against public policy or is an error of law; an arbitrator only exceeds his power if he mandates that an illegal act be carried out or requires a public employer to do that which the employer could not do voluntarily. *See generally Borough of Nazareth v. Nazareth Borough Police Association*, 545 Pa. 85, 680 A.2d 830 (1996); *Pennsylvania State Police v. Pennsylvania State Troopers' Association*, 540 Pa. 66, 656 A.2d 83 (1995).

Moreover, our Supreme Court has expressly rejected the use of "public policy" considerations in deciding whether an Act 111 award is proper. In *Pennsylvania State Police v. Pennsylvania State Troopers Association (Smith)*, 559 Pa. 586, 741 A.2d 1248, 1252–1253 (1999), it stated:

[The State Police] argues that an arbitrator can exceed his or her powers not only by ordering an illegal act or an act

which does not relate to the terms and conditions of employment, but also by issuing an order which contravenes "public policy". We are unable to accept this position. Broadening the narrow certiorari scope of review to include a provision which would allow the courts to interfere with an arbitrator's award whenever that award could be deemed to be violative of "public policy"—however that nebulous concept may be defined by a particular appellate court—would greatly expand the scope of review in these matters. If we were to adopt the State Police's recommendation to include this ill-defined term within the narrow certiorari scope of review, we would markedly increase the judiciary's role in Act 111 arbitration awards. This would undercut the legislature's intent of preventing protracted litigation in this arena.

■ By issuing an award that divided among police officers an amount equal to that which the SIT clerks would have been paid if the City had followed the SIT Agreement and arbitration awards, the Arbitrator did not mandate the City to perform an illegal act and the City could voluntarily pay the award if it so desired. Therefore, the trial court did not err in ordering the City to pay the FOP an amount equivalent to wages its members earned for work they performed that was

review that requires a two-pronged analysis. "First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collec-

tive bargaining agreement." *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA–NEA)*, 560 Pa. 135, 150, 743 A.2d 405, 413 (1999). Our Supreme Court has modified the test by permitting an exception based on whether the arbitrator's award strikes at the very "core function" of the public enterprise that would be to deprive the public employer of its ability to discharge that essential function. *Greene County v. District 2, United Mine Workers of America*, 578 Pa. 347, 852 A.2d 299 (2004).

**136**

supposed to have been done by others.[13]

■ With regard to the award of counsel fees, the Arbitrator based that award on finding that the City's conduct was blatant, willful and in total disregard of its responsibilities under the CBA. The CBA provided for an award of counsel fees as follows:

[I]n the event that the Arbitrator shall determine that either party acted in bad faith with regard to the facts underlying the issues or with regard to the conduct of the proceedings, the Arbitrator is empowered to assess all or a portion of the fees and expenses incurred in the presentation of the case and reasonable attorneys' fees as an element of damage.

(CBA, Article XX, Section 9, at 16–17; Reproduced Record at 244–245.)

The Arbitrator, in reviewing this case, found that the City acted in bad faith and awarded the FOP counsel fees. Because an award of counsel fees was specifically authorized by the CBA once a bad faith finding was made, the award of counsel fees was proper. *City of Philadelphia, Office of Housing and Community Development v. American Federation of State, County and Municipal Employees, Local Union 1971*, 166 Pa.Cmwlth. 403, 646 A.2d 1263 (1994).

Finally, the City argues that the Arbitrator's award was not rationally derived from the CBA. The City notes that the "essence test" must be applied to grievance arbitration awards, and that our Court's standard of review is "narrow certiorari" with regard to Act 111 arbitration awards. The City contends that because the instant case addresses grievance arbitration and not interest arbitration, the essence test should be applied.

As we noted previously, the review of an Act 111 arbitration award must be conducted under the narrow certiorari scope of review, and our Supreme Court has rejected the use of the essence test as inconsistent with this scope of review. Because narrow certiorari and not the essence test is the proper scope of review for an Act 111 arbitration award, the Arbitrator's award was rationally derived from the CBA because it properly applied the narrow certiorari scope of review.

Accordingly, the decision of the trial court is affirmed.

### ORDER

AND NOW, this *20th* of *July*, 2006, the order of the Court of Common Pleas of Lackawanna County, dated June 22, 2005, is affirmed.

---

**13.** The City agreed to pay damages for breach of contract. Article XXVII, Section 2 of the CBA provides: "[t]he City shall pay the remaining $50,000 in damages, with interest determined in accordance with the [CBA] arising from the minimum manpower award. Said monies shall be paid by the City in the first paycheck following the ratification of this Agreement."