CITY OF SCRANTON, Appellant

v.

FIRE FIGHTERS LOCAL UNION NO. 60 OF INTERNATIONAL ASSOCIA-TION OF FIRE FIGHTERS, AFL–CIO.

Commonwealth Court of Pennsylvania.

Argued April 10, 2007.

Decided May 8, 2007.

Kelly M. Ochreiter, Kingston, for appellant.

Stephen J. Holroyd, Philadelphia, for appellee.

BEFORE: SMITH–RIBNER, Judge, FRIEDMAN, Judge, and SIMPSON, Judge.

1. Act of June 24, 1968, P.L. 237, 43 P.S. §§ 217.1–217.10.

## OPINION BY Judge FRIEDMAN.

The City of Scranton (City) appeals from the September 18, 2006, order of the Court of Common Pleas of Lackawanna County (trial court), which denied the City's petition for review of an Act 111[1] arbitration award. We affirm.

Since the late 1940s, the City has provided retirement benefits to its fire fighters through a pension fund known as the Fireman's Relief and Pension Fund (Fire Fighter Fund), managed by the Pension Board. In the late 1980s, the City consolidated its various pensions programs and, to manage the fund, created an additional board known as the Joint Pension Board, or Composite Pension Board, consisting of two fire fighters, two police officers, two other City employees, the Mayor, the City Controller and the President of City Council.[2]

The Fire Fighters Local Union No. 60 of International Association of Fire Fighters, AFL–CIO, (Union) became concerned with the administration of the Fire Fighter Fund. As a result, the Union negotiated with the City language that was included in Article XVI, Section 7 of the 1998 Collective Bargaining Agreement (CBA). The parties have stipulated that the language remains in the CBA to this day. Article XVI, Section 7 states:

7. The **representatives of the active Fire Fighters** on the Pension Board and the Joint Pension Board shall be selected and shall serve in accordance with the procedures to be determined by the Union.

Article XVI, Section 7 of the CBA (emphasis added).

2. We note that, after the creation of the Joint/Composite Pension Board, the original Pension Board continued to function.

On February 5, 2003, City Council adopted an ordinance, approved by the Mayor, which changed the composition of the pension boards. The City added the following six new members to the Joint Pension Board, all appointed by the Mayor: City Business Administrator, Human Resources Director, Public Safety Director, City Treasurer, Police Chief and Fire Chief. The City increased the membership of the Pension Board from seven to sixteen by adding the same six members and three additional citizens, all appointed by the Mayor.

On April 15, 2003, the Union filed a grievance protesting the City's attempted reconstruction of the membership of the pension boards. Eventually, the matter proceeded to arbitration. The Union argued that the City violated Article XVI, Section 7 and Article VIII, Section 8 of the CBA, which states:

> 8. All past agreements between the parties, all prior arbitration awards between the parties ... and all **past practices** of the City of Scranton which inure to the benefit of the bargaining unit shall be continued, and **are hereby incorporated by reference herein** as fully as though the same were set forth at length, and are hereby made a part hereof, except as the same are specifically and expressly modified herein.

Article VIII, Section 8 of the CBA (emphasis added). The Union also argued that the Union was entitled to costs and attorney fees under Article XXI, Section 7 of the CBA because the City acted in bad faith in packing the pension boards with loyal followers of the Mayor.

In response, the City argued that Article XVI, Section 7 of the CBA addresses only how **active Fire Fighters** who serve on the pension boards are to be selected. The City claimed that the CBA provision does not address the overall composition of the pension boards.

After considering the matter, the arbitrator determined that all members of the pension boards were "representatives of the active Fire Fighters" under Article XVI, Section 7, and, thus, **all** members of the pension boards were to be selected in accordance with procedures determined by the Union. Accordingly, the arbitrator concluded that the City violated the CBA. In addition, the arbitrator concluded that the City acted in bad faith and awarded costs and attorney fees.

The City appealed to the trial court. The City argued that the award of costs and attorney fees would force the City to perform an illegal act, i.e., expend funds that it may not spend under the City's Act 47 financial recovery plan.[3] The trial court concluded that Act 47 did not preclude the award of costs and attorney fees for bad faith conduct because, if it did, then the City could act in bad faith on any issue with impunity. The City also argued that the arbitrator lacked jurisdiction because the CBA contains no provision relating to the overall composition of the pension boards. The trial court agreed that the arbitrator did not have jurisdiction under Article XVI, Section 7, concluding that the provision relates only to the selection of active Fire Fighters to serve on the pension boards. However, the trial court concluded that the arbitrator had jurisdiction under Article VIII, Section 8 because that provision relates to the City's past practice with respect to pension board composition. Thus, the trial court af-

---

3. Act 47 is the Municipalities Financial Recovery Act, Act of July 10, 1987, P.L. 246, *as* *amended,* 53 P.S. §§ 11701.101–11701.501.

firmed the arbitrator's decision. The City now appeals to this court.

Although section 7(a) of Act 111, 43 P.S. § 217.7(a), states that no appeal shall be allowed to any court from the determination of a board of arbitration, courts have limited jurisdiction, in the nature of narrow certiorari, to review arbitration awards. *City of Farrell v. Fraternal Order of Police, Lodge No. 34*, 538 Pa. 75, 645 A.2d 1294 (1994). Thus, our review is limited to questions concerning: (1) the arbitrator's jurisdiction; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; and (4) deprivation of constitutional rights. Id. An arbitrator who mandates that an illegal act be carried out exceeds his or her powers. *Pennsylvania State Police v. Pennsylvania State Troopers Association*, 540 Pa. 66, 656 A.2d 83 (1995).

## I. Act 47

The City first argues that the trial court erred in concluding that the arbitrator did not exceed his powers by requiring the City to violate its Act 47 financial recovery plan, which the City adopted in May 2002.[4]

Section 252 of Act 47 states that "[a] collective bargaining agreement or arbitration settlement executed after the adoption of a [financial recovery] plan shall not in any manner violate, expand or diminish [the financial recovery plan's] provisions." 53 P.S. § 11701.252. Section 252 does not affect the application or interpretation of a CBA executed prior to the adoption of a fiscal recovery plan. *City of Scranton v.*

*E.B. Jermyn Lodge No. 2*, 903 A.2d 129 (Pa.Cmwlth.2006), *appeal denied*, 591 Pa. 717, 919 A.2d 959 (2007). Here, the CBA was executed on June 6, 1998, (*see* R.R. at 193a), which is before the adoption of the financial recovery plan in May 2002. Thus, section 252 of Act 47 does not affect the application or interpretation of the CBA.

The City argues that, pursuant to *City of Farrell* and *Pittsburgh Fire Fighters Local No. 1 v. Yablonsky*, 867 A.2d 666 (Pa.Cmwlth.2005), section 252 also applies to **arbitration awards** executed after the adoption of a financial recovery plan. However, as the Union points out, those cases involve interest arbitration rather than grievance arbitration awards. Interest arbitration occurs when an employer and employee are unable to agree on the terms of a collective bargaining agreement; grievance arbitration occurs when the parties disagree as to the interpretation of an existing collective bargaining agreement. *Town of McCandless v. McCandless Police Officers Association*, 587 Pa. 525, 901 A.2d 991 (2006). In other words, section 252 does not apply to arbitration awards stemming from an arbitrator's interpretation of an existing collective bargaining agreement in grievance arbitration; however, it does apply when an arbitrator is ruling on negotiations that look toward a not-yet-executed agreement in interest arbitration.

Because this is a grievance arbitration case involving an existing CBA, section 252 does not apply here.

4. Chapter II–B, Section 16 of the City's financial recovery plan mandates that "past practice" provisions be eliminated from the CBA:
    16. *Elimination of Past Practices.* Any provision or clause in any collective bargaining agreement which protects past practices ... shall be eliminated. The Un-
    ions shall be given the opportunity to identify and negotiate any specific practices or rights which they would like to preserve and have included in future collective bargaining agreements.
    (R.R. at 728a.)

## II. Punitive Damages

■ The City next argues that the trial court erred in concluding that the arbitrator's award of costs and attorney fees for bad faith conduct would not force the City to perform an act, i.e., the payment of punitive damages, which is illegal as against public policy.[5]

In *City of Scranton,* this court addressed this very issue.

> While our Supreme Court ... held that under the essence test, courts could, based on **public policy** considerations, reverse an arbitrator acting under Act 195 to award punitive damages, that decision is not applicable here because in an arbitration award involving Act 111 bargaining units, the narrow certiorari test, not the essence test, is used to review those awards. This test is much more circumscribed than the essence test. As our Supreme Court has instructed, **what is in excess of the arbitrator's powers under that test is not whether the decision is** unwise, manifestly unreasonable, **burdens the taxpayer, is against public policy** or is an error of law; an arbitrator only exceeds his power if he mandates that an illegal act be carried out or requires a public employer to do that which the employer could not do voluntarily.

*City of Scranton,* 903 A.2d at 134–35 (citation and footnote omitted) (emphasis added).

Thus, because we must operate under the narrow certiorari scope of review, we may not consider whether the arbitrator's award of costs and attorney fees consti-

tutes punitive damages or whether it exceeded his power because it was against public policy.

## III. Jurisdiction

■ Finally, the City argues that the trial court erred in concluding that the arbitrator had jurisdiction when the CBA contains no provision relating to pension board composition.

■ Where the resolution of an issue turns on the interpretation of a collective bargaining agreement, we are bound by the arbitrator's determination, even though we may find it to be incorrect. *Pennsylvania State Police v. Pennsylvania State Troopers Association,* 840 A.2d 1059 (Pa.Cmwlth.), *appeal denied,* 578 Pa. 711, 853 A.2d 363 (2004). Thus, this court may not question the reasonableness of an arbitrator's interpretation of a collective bargaining agreement. *Township of Ridley v. Fraternal Order of Police Lodge # 27,* 718 A.2d 872 (Pa.Cmwlth.1998), *appeal denied,* 563 Pa. 636, 758 A.2d 666 (1999).

Here, the arbitrator interpreted the words "representatives of the active Fire Fighters" in Article XVI, Section 7 of the CBA to refer to **all** members of the pension boards, not just the bargaining unit members. We must accept this interpretation, which is one reasonable interpretation of the provision. Indeed, to some extent, all members of the pension boards represent the interest of all fire fighters in the management of the pension funds. Because Article XVI, Section 7 pertains to the selection of such "representatives" on

---

5. The City cites case law stating that an arbitrator's imposition of punitive damages on governmental entities is contrary to public policy because it exacts retribution on blameless and unknowing taxpayers. *See City of Philadelphia, Office of Housing and Community Development v. American Federation of* State County Municipal Employees, Local Union No.1971, 583 Pa. 121, 876 A.2d 375 (2005). However, none of those cases involved a CBA with a provision permitting an arbitrator to award punitive damages for bad faith conduct.

the pension boards, contrary to the City's argument and the trial court's reasoning, there is a provision in the CBA relating to pension board composition.

Accordingly, we affirm.

## ORDER

AND NOW, this 8th day of May, 2007, the order of the Court of Common Pleas of Lackawanna County, dated September 18, 2006, is hereby affirmed.