**INTERNATIONAL ASSOCIATION OF FIREFIGHTERS LOCAL 1400, CHESTER CITY FIREFIGHTERS,** Appellant

v.

**The CITY OF CHESTER.**

Commonwealth Court of Pennsylvania.

Argued Feb. 8, 2010.

Decided March 22, 2010.

Stephen J. Holroyd, Philadelphia, for appellant.

Michael L. Maddren, Media, for appellee.

BEFORE: SIMPSON, Judge, and BROBSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge SIMPSON.

This appeal originating in a grievance arbitration award involving fire fighters of a distressed municipality requires this Court to again examine the effect of the Municipalities Financial Recovery Act (Act 47)[1] on collective bargaining rights under the statute known as the Policemen and Firemen Collective Bargaining Act (Act 111).[2]

In particular, we are asked whether a 2006 amendment to the City of Chester's (City) Act 47 Recovery Plan, which caps annual wage increases at 3%, prohibits an Act 111 arbitration award of a wage increase for the year 2007 in excess of 3% based on the parties' collective bargaining agreement covering the years 2002–2006 (2002–06 CBA). The International Association of Fire Fighters Local 1400, Chester City Fire Fighters (Fire Fighters) appeals from an order of the Court of Common Pleas of Delaware County (common pleas court) granting the City of Chester's (City) petition to set aside an Act 111 grievance arbitration award. We affirm as modified.

## I. Background

### A. Recovery Plan

In 1995, the City petitioned the former Department of Community Affairs, now the Department of Community and Economic Development (Department), for assistance under Act 47. Thereafter, the Department determined the City to be a "financially distressed municipality" under Act 47, and it appointed an initial coordinator to develop a recovery plan.[3] In 1996, the City adopted its initial plan (Original Recovery Plan).

Chapter V of the Original Recovery Plan (Collective Bargaining Issues) addressed the City's high labor costs, which, at that time, amounted to 80% of the City's annual budget. As to the City's Fire Department, the Original Recovery Plan's recommendations provided that any wage increases resulting from collective bargaining or interest arbitration must not result in increases to the "Total Average Cost Per Fire Employee" in excess of 1.5% over the preceding year's cost per employee. Reproduced Record (R.R.) at 116a–17a. These recommendations also provided the plan could be amended as circumstances require. *Id.* at 115a–16a. Following the enactment of the Original Recovery Plan, the City and Fire Fighters reached agreement on two CBAs. The 2002–06 CBA, at issue here, had a stated term of January 1, 2002 through December 31, 2006.

In 2006, the City adopted an updated recovery plan (2006 Recovery Plan) developed by a successor coordinator. The 2006 Recovery Plan included the following recommendation for a salary growth cap (with emphasis added):

7. The predominance of labor related costs makes it critical to contain labor and benefit expense growth.... The fol-

---

1. Act of July 10, 1987, P.L. 246, *as amended,* 53 P.S. §§ 11701.101–11701.501.

2. Act of June 24, 1968, P.L. 237, 43 P.S. §§ 217.1–217.10.

3. An Act 47 recovery plan takes into account a number of factors relevant to alleviating the financially distressed status of the municipality. Section 241 of Act 47, 53 P.S.

§ 11701.241. Once a recovery plan is adopted, the municipality must follow its recommendations or risk such penalties as the withholding of Commonwealth funds. Section 251, 53 P.S. § 11701.251. *"A collective bargaining agreement or arbitration settlement executed after the adoption of a plan shall not in any manner violate, expand or diminish its provisions."* Section 252, 53 P.S. § 11701.252 (emphasis added).

lowing provisions shall apply to all collective bargaining contracts entered into following adoption of this 2006 Recovery Plan:

a. *Cap annual wage and salary growth for both represented and non-represented employees at the lower of 3 percent or the annual inflation rate as represented by the change in the Consumer Price Index* (which might require employees to pay a portion of their benefit costs, as is done in many other jurisdictions). . . .

R.R. at 325a.

## B. 2002–06 CBA

Relevant here, the parties' 2002–06 CBA, included a "parity provision," which provides (with underline added):

SCHEDULE   A—ANNUAL   SALA-
RIES

\*    \*    \*

The following wage increases will be effective on the dates indicated:

\*    \*    \*

*Effective **January 1 of each successive year of this Agreement** (2003–2006 ), each member will receive a percentage or flat dollar wage increase or bonus equal to the wage increase or bonus provided to members of the bargaining unit of City employees represented by the Fraternal Order of Police, plus an additional increase of $500 in his or her base annual wage.*

*Id.* at 428a.

## C. 2007 Grievance

Unlike Fire Fighters, the City's police employees, represented by the Fraternal Order of Police (FOP), reached an agreement on the terms of a successor contract to replace their 2002–06 CBA. The FOP and City negotiated a one-year contract maintaining the terms and conditions of the 2002–06 CBA. However, the parties agreed to a 3% wage increase for FOP members in 2007.

In December, 2007, Fire Fighters filed a grievance alleging the City violated the parity provision in Schedule A of the 2002–06 CBA by failing to pay them the 3% wage increase given to the police in 2007, plus $500. The parties could not resolve the grievance, and it proceeded to binding arbitration.

## D. Arbitration Award

In September, 2008, Arbitrator Ralph H. Colflesh, Jr. (Arbitrator) issued a decision and award sustaining Fire Fighters' grievance. Arbitrator defined the dispositive issue in the matter as: "whether the Schedule A obligation to grant [F]ire [F]ighters annual wage increases on parity with police plus a $500 annual wage increase persists in light of the expiration of the [2002–06 CBA] and [the 2006 Recovery Plan] that limits wages [sic] increases to 3%." R.R. at 11a. Citing this Court's decision in *City of Scranton v. E.B. Jermyn Lodge No. 2 of the Fraternal Order of Police*, 903 A.2d 129 (Pa.Cmwlth.2006) (*Scranton FOP (2006 )*), Arbitrator determined the 2002–06 CBA continues in its entirety until it is replaced by a successor contract or an Act 111 interest arbitration award. R.R. at 12a. In so doing, Arbitrator reasoned:

I understand the broader holding of [*Scranton FOP (2006 )*] to be that *all* aspects of *an Act 111 labor contract* survive until the contract is replaced by either a new negotiated agreement or an interest arbitration award. If that is so, it does not matter whether enforcement of the Agreement would merely restore a previously existing level of benefit that the employer had reduced or force the expansion of a benefit as per the contract's requirements. In effect, I do not think the contraction/expansion differ-

ence matters. In this case, the subsisting [2002–06 CBA] requires parity with the police along with a $500 additional wage increase each year. To find that the parity language of Schedule A is no longer effective would be to choose a portion of the Agreement for elimination while purporting to honor the remainder of the contract. That [is] both illogical and a violation of arbitral jurisdiction conferred by Article 16 of the [2002–06 CBA], under which an arbitrator may not "alter or otherwise amend" any provision of the Agreement. In plain words, either the entire contract subsists or none of it does. The current case law of the Commonwealth is clear that all of an expired contract within an Act 111 context remains effective after expiration. [*Scranton FOP (2006 )* ].

I also reject the City's argument that the [2006 Recovery Plan] would bar any increase over 3%. The [2002–06 CBA] predates the [2006 Recovery Plan], and the law governing application of such plans makes clear that a Recovery Plan cannot supersede the terms of a labor contract that precedes it.

Finally, I reject the City's argument that the language of Schedule A defeats [Fire Fighters'] claims for parity and $500 increases after 2006. If all of the Agreement survives its nominal date of expiration, then the Schedule A language ... also survives. Specifically, since the Agreement is still in effect until replaced with a successor contract or Act 111 Award, it ineluctably follows that each year after December 31, 2006 is a "successive year of [the] Agreement." Moreover, I do not find that the parenthetical enumeration of the years of the Agreement in Schedule A language to be dispositive.... Such identifiers are common in the public sector where contracts tend to be merged into each other term after term and ana-

chronistic language frequently persists for years and years. If the parties intended to end the effect of Schedule A precisely at midnight December 31, 2006, they would have done so far more expressly.

*Id.* at 12a–13a (citation omitted).

Accordingly, Arbitrator sustained the grievance and directed the City to pay Fire Fighters the 3% wage increase plus the additional $500 wage increase. *Id.* at 13a. In order to prevent a windfall, Arbitrator's award further provided that any negotiated agreement or interest arbitration award for the year 2007 shall supersede the grievance award. *Id.* Thus, any amounts paid pursuant to the grievance award shall be deducted from any negotiated or awarded increase equal to or greater than the 3% and $500 increase. *Id.* Further, in the event the negotiated or awarded increase is less than the 3% and $500 increase, the difference shall be recouped in equal installments during the first 12 months following the effective date of the negotiated contract or award. *Id.*

### E. Petition to Set Aside Arbitration Award

Thereafter, the City petitioned the common pleas court to set aside the award. It alleged the 2002–06 CBA expired at the end of 2006 and that case law holds economic provisions in expired contracts do not carry over in the absence of a new agreement. The City further alleged Arbitrator's award is contrary to law and the 2006 Recovery Plan. The City also alleged Arbitrator exceeded his power in making the award.

### F. Common Pleas Court Opinion and Order

In June, 2009, the common pleas court entered an order setting aside the award. The court's order further directed that

Fire Fighters "shall remain at their current salaries until a new collective bargaining agreement ... is in place." Common Pleas Ct. Order, 06/30/09.

In an opinion in support of its order, the court acknowledged its narrow *certiorari* review of an Act 111 arbitration award is limited. *Pa. State Police v. Pa. State Troopers Ass'n* (*Betancourt*), 540 Pa. 66, 656 A.2d 83 (1995). The court recognized the City is a financially distressed municipality under Act 47, which precludes arbitrators from issuing awards that violate the provisions of the City's recovery plan. *City of Farrell v. Fraternal Order of Police, Lodge No. 34*, 538 Pa. 75, 645 A.2d 1294 (1994). The City's 2006 Recovery Plan limited annual salary growth to 3%.[4] Therefore, the court concluded Arbitrator's award, which granted Fire Fighters a 3% salary increase, plus $500, directed the City to violate the 2006 Recovery Plan.

The common pleas court further noted Fire Fighters' 2002–06 CBA expired at the end of 2006 and that economic terms, including wage increase provisions, of expired contracts do not carry over in the absence of a new agreement. *Fairview Sch. Dist. v. Unemployment Comp. Bd. of Review*, 499 Pa. 539, 454 A.2d 517 (1982). Ultimately, the court concluded:

> Since the [2002–06 CBA] had expired and the parity clause was no longer in effect; the [2006 Recovery Plan] limited the amount of salary increase [Fire Fighters] could receive; and [A]rbitrator was directing the City to violate the terms of the [2006 Recovery Plan], a directive beyond his power, this court set aside the award.

Common Pleas Ct. Op., 08/24/09, at 4. Fire Fighters appeal.

## II.  Judicial Review

■ Courts have limited jurisdiction, in the form of narrow *certiorari*, to review Act 111 arbitration awards. *Betancourt; City of Farrell; City of Scranton v. Fire Fighters Local Union No. 60, of the Int'l Ass'n of Fire Fighters, AFL–CIO*, 964 A.2d 464 (Pa.Cmwlth.2009) (*Scranton Fire Fighters (2009)*). Review is limited to issues regarding: (1) the jurisdiction of the arbitrator; (2) the regularity of the proceedings; (3) whether the arbitrator exceeded his powers; and (4) constitutional questions. *Id.*

■ Moreover, when the resolution of an issue turns on the interpretation of a CBA, we are bound by the arbitrator's decision, even though we may find it to be in error. *City of Scranton v. Fire Fighters Local Union No. 60, of Int'l Ass'n of Fire Fighters, AFL–CIO*, 923 A.2d 545 (Pa.Cmwlth.2007) (*Scranton Fire Fighters (2007)*). Therefore, this court is precluded from questioning the reasonableness of an arbitrator's interpretation of a collective bargaining agreement. *Id.*

■ However, an arbitrator's powers are not unlimited. An arbitrator may only require a public employer to do that which it could do voluntarily. *Betancourt; Scranton Fire Fighters (2009)*; *Scranton Fire Fighters (2007)*. Further, an arbitrator exceeds his powers by requiring a public employer to act in contravention of a statute such as Act 47. *Id.*

■ Consequently, courts afford deference to an arbitrator's findings of fact or

---

4. The 2006 Recovery Plan actually capped annual salary growth for both represented and non-represented employees at the lower of 3% or the annual inflation rate as represented by the change in the Consumer Price Index (CPI). R.R. at 325a. For purposes of this case, at all time relevant here, the CPI's annual inflation rate exceeded 3%. Therefore, the 3% cap is applicable.

construction of a CBA. *Scranton Fire Fighters (2009 )*. But review of questions of law within the elements of narrow *certiorari* is non-deferential. *Id.* With these principles in mind, we review the merits of Fire Fighters' appeal.

### III. Issues on Appeal

Fire Fighters raise several issues. First, they contend Act 47 does not apply to the 2002–06 CBA, an existing CBA, or Arbitrator's award enforcing it. Second, they contend the application of Act 47 to an existing CBA violates the Impairment of Contracts Clause in the United States and Pennsylvania Constitutions. Third, Fire Fighters maintain Arbitrator did not exceed his powers because he did not order an illegal act and, given its narrow *certiorari* review of Act 111 arbitration awards, the common pleas court erred in failing to defer to Arbitrator's findings and conclusions of law. Fourth, Fire Fighters contend the common pleas court, in directing that Fire Fighters remain at their current salary until a new CBA is reached, exceeded its authority to review an arbitration award.

### IV. Discussion

#### A. Applicability of Act 47 to CBA and Arbitrator's Award

##### 1. Arguments

Citing our decision in *Scranton FOP (2006 )*, Fire Fighters first argue that Act 47 does not apply to existing CBAs or arbitration awards enforcing them. Therefore, Fire Fighters assert, the salary growth cap in the 2006 Recovery Plan does not apply to the parity provision in the 2002–06 CBA or to Arbitrator's award enforcing it, because the parity provision is part of an existing CBA. In *Scranton*, we stated:

The City initially contends that the Arbitrator's award was in excess of his powers because pursuant to Act 47, the City cannot comply with the award without violating the Revised Recovery Plan. In [*Wilkinsburg Police Officers Association by Harder v. Commonwealth*, 129 Pa.Cmwlth. 47, 564 A.2d 1015, 1021 (1989), *aff'd*, 535 Pa. 425, 636 A.2d 134 (1993) ], we held that "Section 252 of Act 47 in no way affects the application or interpretation of a collective bargaining agreement which is executed *prior to* the adoption of a fiscal recovery plan." Because, here, the Revised Recovery Plan was adopted **after** the CBA … took effect, the trial court did not err in determining that Act 47 was not violated and that the Arbitrator acted within his powers.

903 A.2d at 134 (footnote omitted, emphasis in original).

Relying on *Scranton FOP (2006 )* and *Wilkinsburg*, Fire Fighters maintain Section 252 of Act 47 does not affect either the application or interpretation of a CBA executed prior to a recovery plan. Although Act 47 may limit prospective collective bargaining, it has no effect on existing CBAs.

Next, Fire Fighters present a lengthy argument as to why Section 252 of Act 47 applies only to collective bargaining *agreements* or arbitration *settlements*, not to arbitration *awards*. Fire Fighters acknowledge that in *Scranton Fire Fighters (2009 )*, we rejected this argument and recognized Section 252 of Act 47 applies to Act 111 arbitration awards. However, for purposes of preserving this issue for further review, Fire Fighters restate their position here.

Fire Fighters also argue the common pleas court erred in relying on *City of Farrell* for the proposition that Act 47 precludes arbitrators from issuing awards that violate a recovery plan. In *City of*

*Farrell,* the Supreme Court ultimately found the interest arbitration award at issue did not violate the city's recovery plan.

In addition, Fire Fighters assert, applying Act 47 to grievance arbitration awards will create absolute havoc. Act 111's goal is the expeditious and harmonious resolution of labor disputes. Instead of harmony and stability, there will be chaos. Municipalities will rush to enact or amend existing recovery plans to get out of a "bad deal" and obtain that which they could not through collective bargaining by simply circumventing the process.

Here, Fire Fighters maintain, the parity provision in the 2002–06 CBA predated by four years the salary growth cap in the 2006 Recovery Plan. They assert the City's attempt to apply the cap to the existing CBA is identical to the attempt rejected by this Court in *Scranton Fire Fighters (2007)* (Section 252 does not apply to grievance arbitration stemming from an interpretation of an existing CBA).

The City counters the Supreme Court in *City of Farrell* found that Section 252 of Act 47 prohibits an arbitration award from violating the specific recommendations of a recovery plan. In *City of Farrell,* the Court stated:

> A review of the recovery plan reveals a detailed and comprehensive report which contains discussion and recommendations aimed at restoring Farrell's fiscal integrity. ... Immediately after each discussion is a list of enumerated recommendations which is a concise distillation of the broader discussion which preceded it. We agree with Judge Kelley and the FOP that it is these recommendations or "provisions" that section 252 of Act 47, 53 P.S. § 11701.252, prohibits from being violated, expanded or diminished by the arbitration award. ...

> Based upon the foregoing considerations, only a specific recommendation expressly addressing freezes or limits on increases of salaries in collective bargaining agreements would potentially invalidate an arbitration award that provided for such an increase.

538 Pa. at 82–83, 645 A.2d at 1298–99 (footnote omitted).

Here, the City asserts, the salary growth cap is included in a specific recommendation of the 2006 Recovery Plan. *See* R.R. at 325a. Therefore, its effectiveness is without question. *City of Farrell.* Because the 2002–06 CBA expired in 2006, the City argues the 2006 Recovery Plan prohibits a salary increase in excess of 3% for any year after 2006.

The City further argues *Scranton Fire Fighters (2007)* is easily distinguishable. In *Scranton,* we reviewed a grievance under an ongoing CBA regarding the city's attempted reconstruction of the membership of a pension board. Although the underlying action was filed as a grievance, *Scranton* restricted its holding to grievances interpreting an existing CBA:

> In other words, section 252 does not apply to arbitration awards stemming from an arbitrator's interpretation of an existing collective bargaining agreement in grievance arbitration; however, it does apply when an arbitrator is ruling on negotiations that look toward a not-yet-executed agreement.

923 A.2d at 548.

In contrast, the underlying grievance here asked the arbitrator to make a wage increase award for the year 2007 under a CBA that expired in 2006. Therefore, the City asserts *Scranton Fire Fighters (2007)* is inapplicable.

The City also argues the parity provision, by its own language, expired in 2006. If the parties intended the parity provision

to carry forward past 2006, they would not have used the qualifier, "(2003–2006)" in the language, "Effective **January 1 of each successive year of this Agreement (2003–2006)** ...." R.R. at 428a. Moreover, to continue the wage increase provisions of the expired CBA would provide no incentive for Fire Fighters to negotiate a new CBA.

The City further contends, during the interim period between the expiration of a CBA and the execution of a successor CBA, the parties are required to maintain the *status quo* (last actual, peaceable and non-contested status which preceded controversy). *Fairview.* Maintaining the *status quo* does not require the employer to continue financial increases specified in expired CBA. In *Fairview,* the Supreme Court stated:

> The underlying rationale for the status quo requirement is that during the interim period between contracts, the employer may continue operations and the employee may continue working, while the parties are free to negotiate on an equal basis in good faith. Maintenance of the status quo is merely another way of stating that the parties must continue the existing relationship in effect at the expiration of the old contract. *To require [the employer] to pay stepped up salary increases beyond the specified years contained in the expired contract changes the existing relationship in the context of the terms and conditions subject to the very negotiations sought to be fostered.*

499 Pa. at 546–47, 454 A.2d at 521 (emphasis added).

The City also cites *Pennsylvania State Park Officers Association v. Pennsylvania Labor Relations Board,* 854 A.2d 674 (Pa. Cmwlth.2004), *appeal denied,* 582 Pa. 704, 871 A.2d 194 (2005). In *State Park Officers,* this Court, in a three-judge panel

decision, applied the *Fairview* rationale in an Act 111 context. In *State Park Officers,* the court stated (with emphasis added):

> Regardless of the reason for the delay in this or any other case, we must be mindful of Act 111's deadlines and its goal of encouraging good faith collective bargaining. *To interpret status quo as suggested by Complainants would allow employees to obtain an unfair advantage over their public employers by obtaining the very wage increases under negotiation.* This would discourage good faith negotiations and compliance with the Act 111 deadlines.

854 A.2d at 682.

Here, the City asserts that because the parity provisions provide a financial benefit, *Fairview* and *State Park Officers* are applicable. Consequently, the City urges Arbitrator's decision runs afoul of those decisions.

Because the 2002–06 CBA, including the parity provision, expired at the end of 2006, and Arbitrator's award directs the City to violate the 2006 Recovery Plan and thus violate Act 47, the City maintains the common pleas court properly set aside Arbitrator's award.

### 2. Analysis

#### a. Section 252 of Act 47

Section 252 of Act 47 provides: "A collective bargaining agreement or arbitration settlement executed after the adoption of a plan shall not in any manner violate, expand or diminish its provisions." 53 P.S. § 11701.252. This limitation on Act 111 collective bargaining is constitutional. *Scranton Fire Fighters (2009 ).*

■ Initially, we reject Fire Fighters' preserving argument that Section 252 does not apply to any Act 111 arbitration *awards.* This precise issue was raised

before this Court in *Scranton Fire Fighters (2009 )* and rejected. Section 252 applies to arbitration awards as well as CBAs and arbitration settlements. *Scranton Fire Fighters (2009 )*; *Pittsburgh Fire Fighters, Local No. 1 v. Yablonsky ex rel. King,* 867 A.2d 666 (Pa.Cmwlth.2005). See also *City of Farrell* (court applied Section 252 to an Act 111 arbitration award). Therefore, we reaffirm our holding in *Scranton Fire Fighters (2009 )* that Section 252 applies to Act 111 arbitration awards.

■ Further, we reject Fire Fighters' contention that Section 252 does not apply to grievance arbitration awards like the one here, because those awards seek to enforce a pre-existing agreement. There are several reasons why Act 47 and the 2006 Recovery Plan could be applied to the wage increase here.

First, Fire Fighters' 2002–06 CBA expired at the end of 2006. Although Fire Fighters filed their underlying action as a grievance under the 2002–06 CBA, Arbitrator's award granted Fire Fighters a salary increase for the year *2007.* Consequently, this case does not involve a grievance from an existing CBA.

Second, because the 2002–06 CBA expired and the parties did not reach a new CBA, the *status quo* must be maintained. *Fairview.* However, wage increases are not part of the *status quo* and are not carried over. *Id; State Park Officers.* Therefore, Act 47 and the 2006 Recovery Plan were not applied to existing wage *increase* provisions, because those provisions are not carried over after the expiration of a CBA.

Third, although there is language in *Scranton FOP (2006 )* indicating certain terms of an expired CBA continue, the CBA provisions involved in *Scranton FOP (2006 )* were not wage increase provisions. Rather, they were minimum staffing provisions which required the City to hire a number of civilian clerks. Because wage increase provisions were not involved in *Scranton FOP (2006 )*, that case does not compel a different result here.

In sum, Act 47 and the 2006 Recovery Plan can be applied to a wage increase awarded for a year after the term of an expired CBA. To the extent Arbitrator directed the City to violate the 2006 Recovery Plan and thereby also violate Act 47, he required the City to perform an illegal act. *Scranton Fire Fighters (2009 )*. Arbitrator thus exceeded his powers. *Id.*

### b. Amendment of Recovery Plan

Fire Fighters further contend Arbitrator's award did not direct the City to perform an illegal act because it is within the City's voluntary power to amend the 2006 Recovery Plan. Fire Fighters assert the plain language of the Original Recovery Plan makes it clear that the plan may be amended to deal with changed circumstances. *See* R.R. at 115a–16a.

In addition, Fire Fighters urge that the City would still be obligated to amend the plan to conform to the Act 111 award. *See* Section 7(a) of Act 111, 43 P.S. § 217.7(a) (determination by arbitration panel shall constitute mandate to public employer to take appropriate action to implement award); *Washington Arbitration Case,* 436 Pa. 168, 259 A.2d 437 (1969) (public employer may not hide behind self-imposed legal restrictions; an Act 111 arbitration award which deals only with proper terms and conditions of employment constitutes a mandate to the municipality's legislative body).

Fire Fighters also contend the City, under Act 47, is free to devise its own alternate recovery plan. Section 246 of Act 47, 53 P.S. § 11701.246. It does so by ordinance. *Id.* Similarly an amendment to an

existing recovery plan must also be done by ordinance. Section 245, 53 P.S. § 11701.245. Therefore, Fire Fighters assert, any claim the 2006 Recovery Plan is an omnipotent document governing all elements in this case must be rejected.

In *Scranton Fire Fighters (2009)*, we rejected similar, if not identical arguments. Section 221 of Act 47 authorizes a coordinator to prepare and administer a recovery plan. 53 P.S. § 11701.221. The contents of a recovery plan are specified in Section 241, 53 P.S. § 11701.241. Neither the Department nor the municipality may revise the coordinator's plan. Section 244, 53 P.S. § 11701.244. Thereafter, the municipality may adopt or reject the coordinator's plan. Section 245, 53 P.S. § 11701.245.

If the coordinator's recovery plan is not adopted, the municipality must prepare and take action on an alternative plan. Section 246, 53 P.S. § 11701.246. Separate provisions exist for implementation of a coordinator's recovery plan versus implementation of a municipality's alternative recovery plan. Section 247, 53 P.S. § 11701.247. "An amendment to an adopted plan may be initiated by the coordinator, the chief executive officer or the governing body of a municipality, as the case may be." Section 249, 53 P.S. § 11701.249.

Analyzing these provisions in *Scranton Fire Fighters (2009)*, we reasoned:

Viewed in the context of all the provisions just discussed, we conclude that the party who developed the recovery plan at issue is empowered to initiate an amendment of its recovery plan. *Where, as here, the coordinator's recovery plan was adopted, the coordinator is the one empowered to initiate any amendment. Conversely, where the coordinator's recovery plan was adopted, the municipality is not empow-* *ered to initiate amendment of the plan. Accordingly, we discern no error in the common pleas court's conclusion that the City here could not unilaterally amend the 2002 Recovery Plan to comply with the arbitration award.*

Similarly, we reject the argument that the Act 111 arbitration award constitutes a mandate to the City to amend the 2002 Recovery Plan. *Operating under the Plan Coordinator's Recovery Plan, the City simply lacks the authority to do so.* There is nothing in Act 111 which empowers a distressed municipality to take action which is contrary to positive law.

964 A.2d at 478.

■ Here, as in *Scranton*, the City is operating under a coordinator's recovery plan adopted the City. Therefore, *Scranton Fire Fighters (2009)* is controlling on the issue of whether the City may unilaterally amend the 2006 Recovery Plan. The City simply lacks the authority to do so. *Id.*

#### c. Remedy

Given courts' narrow *certiorari* review in Act 111 arbitration cases, Arbitrator's decision and award must be upheld to the extent it does not require the City to violate the salary growth cap recommendation in the 2006 Recovery Plan. *City of Farrell; Scranton Fire Fighters (2009)*; *Scranton Fire Fighters (2007)*.

■ Although we agree with the common pleas court that the 2002–06 CBA, including the parity provision in Schedule A, by its own terms, expired at the end of 2006, such findings of fact and conclusions of law fall within the exclusive province of Arbitrator in this matter. *Id.* Under narrow *certiorari* review, the test for determining whether the arbitrator acted in excess of his powers is not whether the

arbitrator's decision is unwise, clearly unreasonable, burdens the taxpayer, is against public policy or constitutes an error of law. *Scranton FOP (2006 )*. Thus, even if it was an error of fact or law for Arbitrator to award the 3% wage increase, that error is not within our review under narrow *certiorari.* Indeed, the City could voluntarily grant a 3% wage increase, but it could not voluntarily grant a wage increase greater than 3%. The only part of the award that violated Act 47 and the 2006 Recovery Plan was the additional $500 base wage increase.

### B. Constitutional Issues: Impairment of Contracts

Citing *Scranton FOP (2006 )* and *Wilkinsburg,* Fire Fighters again contend the common pleas court's application of Section 252 of Act 47 to an *existing* CBA is unconstitutional. Stated simply, Fire Fighters assert the common pleas court disregarded the plain statement in *Wilkinsburg* that Section 252 in no way affects the application and interpretation of an existing CBA, and the court essentially concluded Act 47 nullifies any CBA existing prior to the implementation of a recovery plan. This would violate the prohibitions in Article I, Section 10 of the United States Constitution and Article I, Section 17 of the Pennsylvania Constitution against laws impairing the obligation of contracts.[5]

■ We dismiss this argument on the threshold basis that "the impairment of contracts clause is not violated by a judicial determination, but only by an enactment of the legislature." *Burns v. Pub. Sch. Employees' Retirement Bd.,* 853 A.2d

1146, 1154 (Pa.Cmwlth.2004). *See also Koken v. Legion Ins. Co.,* 831 A.2d 1196 (Pa.Cmwlth.2003), *aff'd sub nom. Koken v. Villanova Ins. Co.,* 583 Pa. 400, 878 A.2d 51 (2005), citing *Barrows v. Jackson,* 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953) (impairment of contracts clause is directed only at impairment by legislation, not by judgments of courts).

■ Here, as Fire Fighters acknowledge, Section 252 of Act 47 is a limitation on prospective Act 111 collective bargaining. *Wilkinsburg.* More importantly, the common pleas court's application of Act 47 and the 2006 Recovery Plan to Arbitrator's award interpreting the 2002–06 CBA as providing for a wage increase for the year 2007, is a *judicial determination* that does not give rise to a cognizable impairment of contracts claim under the Contracts Clause of the United States and Pennsylvania Constitutions. *Burns; Koken.*

### C. Common Pleas Court Order

■ Fire Fighters assert a common pleas court's review of an arbitration award is limited to that of an appellate court. 42 Pa.C.S. § 933(b). It can either confirm or vacate the award. In enacting Act 111, the Legislature placed severe restrictions upon a court's review of an arbitration award. *Betancourt.*

Fire Fighters also contend that the common pleas court inserted itself into the parties' collective bargaining relationship by not merely vacating the award, but also ordering no subsequent wage increase can go into effect absent a successor CBA. Reviewing courts should not become "superarbitrators." *State Sys. of Higher Educ. (Cheyney Univ.) v. State Coll. Univ.*

---

**5.** Article I, Section 10 of the United States Constitution relevantly provides, "No State shall ... pass any ... ex post facto Law, or Law impairing the Obligation of Contracts ...." Article I, Section 17 of the Pennsylvania Constitution provides, "No ex post facto law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed."

*Prof'l Ass'n (PSEA–NEA)*, 560 Pa. 135, 743 A.2d 405 (1999). The parties to a CBA bargained for the arbitrator's construction, not that of a reviewing court. *Id.*

The common pleas court's order provides (with emphasis added):

[I]t is hereby ORDERED that the arbitration award ... is set aside. *It is FURTHER ORDERED that [Fire Fighters] shall remain at their current salaries until a new [CBA] between the City and [Fire Fighters] is in place.*

Common Pleas Ct. Order, 06/30/09. The common pleas court vacated Arbitrator's award because it required the City to violate its Recovery Plan and Act 47. However, the only part of the award that violated the 2006 Recovery Plan was the additional $500 wage increase. Even if it was an error of fact or law for the Arbitrator to award the 3% increase, that error is not within our review under narrow *certiorari*. *Scranton Fire Fighters (2009)*; *Scranton Fire Fighters (2007)*.

As discussed above, the City could voluntarily grant a 3% wage increase, but it could not voluntarily grant a wage increase greater than 3%. Therefore, the common pleas court's order should be affirmed as modified.[6] Only that part of the award granting an additional wage increase of $500 is set aside; only wage increases in conformance with the 2006 Recovery Plan are permitted.

## V. Conclusion

For all the reasons discussed, we affirm the common pleas court, as modified.

*ORDER*

AND NOW, this 22nd day of March, 2010, the order of the Court of Common Pleas of Delaware County, entered June 30, 2009, is **AFFIRMED as MODIFIED.** The arbitration award, as modified, provides (with deletions stricken):

The grievance is sustained. The City violated the Agreement when it failed to increase [Fire Fighters'] wages by 3% as it had done with the police, and when it failed to pay the $500 bonus, as required by Schedule A.

The City shall pay the said 3% ~~plus $500~~ retroactively to January 1, 2007. However, to avoid a windfall, in the event [Fire Fighters] and City negotiate or receive an Act 111 Award for the term January 1, 2007, the terms of the negotiations or Award shall supersede this remedy. Any amounts paid pursuant to this remedy shall be deducted from any wage increases that are equal or greater than the 3% ~~and $500~~ increase. In the event the negotiated increases or Award provisions are less than the 3% ~~and $500~~ increase, the difference between the amount negotiated or awarded and the 3% ~~and $500~~ shall be recouped in equal installments by the City during the first 12 months next following the effective date of the negotiated contract or Award.

---

**6.** Pursuant to Section 706 of the Judicial Code (disposition of appeals), this Court may "affirm, *modify*, vacate, set aside, or reverse any order brought before it for review, and may remand the matter and direct the entry of such appropriate order or require such further proceedings to be had as may be just under the circumstances." 42 Pa.C.S. § 706 (emphasis added).