# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Uwchlan Township, Pennsylvania,    :
                Appellant    :
                               :
        v.                 :
                               :   No. 259 C.D. 2020
Uwchlan Township Police Association  :   Argued: September 15, 2020


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON        FILED: October 9, 2020


Uwchlan Township (Township) appeals from an order of the Chester County Court of Common Pleas (trial court) dated January 27, 2020, denying its request to vacate an Act 111[1] grievance arbitration award issued by an arbitrator changing the discipline the Township imposed on a police officer from a termination to a one-year suspension. Upon review, we affirm.

On January 8, 2019, the Chairman for the Township Board of Supervisors (Board) notified Andrew Kline (Officer Kline), a full-time police officer, of the Board's decision to terminate his employment for violating what is

---

[1] Act 111 is the common name for the Policemen and Firemen Collective Bargaining Act, Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1-217.12.

known as the Police Tenure Act,[2] The Second Class Township Code,[3] and several sections of the Township's Police Policy and Procedure Manual (Manual). Reproduced Record (R.R.) at 400a-02a. The Board's decision arose from an incident that occurred on October 26, 2018, when Officer Kline was on duty with Patrolman Warren Obenski (Officer Obenski) and Sergeant David J. Balben (Sergeant Balben). *Id.* at 12a, 29a-30a. During their shift, the three officers responded to a domestic violence call and, while at the caller's residence, Sergeant Balben seized a black duffel bag on the suspicion that it contained illegal drugs. *Id.* at 30a. Sergeant Balben told Officer Kline that he was seizing the black duffel bag and planned to obtain a search warrant, and Sergeant Balben placed the bag in his police car. *Id.* at 201a.

After arriving at the police station, Officer Obenski processed the bag and reminded Officer Kline that it could not be opened or searched until a search warrant was obtained. R.R. at 34a-37a. Despite this warning, Officer Kline searched the bag without a warrant, in the presence of Officer Obenski, and discovered that it contained marijuana and drug paraphernalia. *Id.* at 36a-37a. Officer Kline subsequently drafted a police report documenting the events, but did not mention his search of the bag in the report. *Id.* at 246a-47a. Before going off duty, Officer Kline informed Detective Sergeant Thomas Fortmann (Detective Fortmann) that they needed a search warrant to look in the duffel bag, but again did not mention that he already searched the bag. *Id.* at 76a, 78a. Relying on Officer Kline's statement, Detective Fortmann applied for and obtained a search warrant and used Officer Kline's police report as a basis to complete the affidavit of probable cause. *Id.* at

[2] Act of June 15, 1951, P.L. 586, *as amended*, 53 P.S. §§ 811-816.

[3] Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§ 65101-68701.

2

78a-82a. Once it became apparent that Officer Kline conducted an unlawful search of the bag, the Chester County District Attorney's Office refused to conduct any further investigation into the matter. *Id.* at 85a-86a.

As a result of this incident, the Township Police Department (Department) placed Officer Kline on administrative suspension. R.R. at 12a. The Department undertook an independent investigation into Officer Kline's conduct and hired Langdon Ramsburg, Esquire (Ramsburg) to do the investigation. *Id.* at 137a. During the investigation, Officer Kline told Ramsburg that he opened the bag because he believed it contained an explosive device that posed a threat to the safety of his fellow officers. *Id.* at 282a-83a, 349a. Ramsburg subsequently issued an investigative report that included findings and a list of Manual violations committed by Officer Kline.[4] *Id.* at 146a-47a, 277a-90a. Township Police Chief Scott Alexander (Police Chief Alexander) reviewed the investigative report and notified Officer Kline of the charges against him. *Id.* at 172a-73a. Officer Kline declined a pre-disciplinary conference and, instead, provided written responses to the charges. *Id.* at 174a. After reviewing Officer Kline's responses, Police Chief Alexander recommended to the Board that it terminate Officer Kline given the number of Manual violations and the fact that two were Class I offenses.[5] *Id.*

---

[4] Specifically, Ramsburg concluded that Officer Kline violated the following: conduct unbecoming an officer; expectations of conduct generally for an officer; abuse of process; arrests, search and seizure; preliminary investigation; and the legal requirements for a search warrant. *See* Manual §§ 6.10, 6.15, 8.10.12, 8.11.11, 8.12.3, 13.21.3.1 & 15.4.2, respectively; R.R. at 289a-90a. Ramsburg stated that a recommendation would be provided to the Board by special labor counsel under separate cover. R.R. at 290a.

[5] The Manual provides a list of offenses and recommended discipline intended to provide a "guide" to officers, the Police Chief, and Township officials. Manual § 8.9; R.R. at 481a. The Manual states that there are three classes of offenses:

8.9.1. Class I Offenses

The Board voted to terminate Officer Kline effective January 8, 2019. R.R. at 400a. In its termination notice, the Board listed all the charges against Officer Kline, including two Class I offenses for abuse of process and violating the provision relating to arrests, search, and seizure.[6] *Id*. at 400a-01a. The Board explained that Officer Kline was terminated due to his "warrantless search of a black

> Breaches of policy and procedure in this category may lead to disciplinary action up to and including immediate dismissal from the Department. A Class I offense does not automatically entail dismissal. The actual disciplinary action will reflect the circumstances of the violation and past pertinent violations.
>
> 8.9.2. Class II Offenses
>
> Corrective action may begin with instruction and suspension, and progress up to discharge from employment.
>
> 8.9.3. Class III Offenses
>
> Offenses listed in this group require corrective action beginning with a verbal warning and progressing up to dismissal from employment.

Manual §§ 8.9.1-8.9.3; R.R. at 481a.

[6] The abuse of process provision in the Manual states:

> Officers shall not convert to their own use, manufacture, conceal, falsify, destroy, remove, tamper with or withhold evidence/information, or make false accusations of a crime or traffic discharge. . . .

Manual § 8.11.11; R.R. at 486a. The arrests, search, and seizure provision of the Manual provides:

> Officers shall not make any arrests, searches, or seizures that they know or should know are not in strict accordance with applicable existing law/case law and Departmental procedures. . . .

Manual § 8.12.3; R.R. at 488a.

duffel bag on or about October 26, 2018, as well as inaccuracies and omissions in the report [he] prepared concerning the incident, in furtherance of the criminal investigation and search warrant, and in statements [he] provided during the Department['s] investigation into [his] conduct." *Id.* at 401a.

Pursuant to the terms of the collective bargaining agreement (CBA) between the Uwchlan Township Police Association (Union) and the Township, Officer Kline filed a grievance challenging his termination. R.R. at 13a, 403a. When the parties could not resolve the matter through the grievance procedure, it was assigned to an arbitrator for adjudication. *Id.* at 403a-09a. The arbitrator held a hearing on June 10, 2019, at which both parties were represented by counsel, put on and cross-examined witnesses, and admitted exhibits into evidence both jointly and individually. *Id.* at 1a-5a, 408a.

On September 23, 2019, the arbitrator issued an order and decision granting in part and denying in part Officer Kline's grievance. *Id.* at 507a-30a. The arbitrator began by explaining that this case turns on three accusations: (1) Officer Kline "wrongfully" searched the contents of the bag for which the Department was going to seek a search warrant; (2) Officer Kline filed a false and incomplete report regarding the October 26, 2018 incident, including seizure of the bag; and (3) Officer Kline gave false statements to Ramsburg during the investigation. *Id.* at 525a. Based on his review of the evidence, the arbitrator found that two of the Township's charges were supported, specifically charges one and three.[7] *Id.* at 525a-27a.

---

[7] The arbitrator concluded that the evidence did not support the conclusion that Officer Kline filed a false and incomplete police report. R.R. at 525a. In support of this conclusion, the arbitrator explained that Officer Kline had a history of report writing problems, he normally had assistance with completing reports, and the incident occurred at the end of the shift right before a long weekend. *Id.* The circumstances at the time compelled Sergeant Balben to write only an "entry" with the intention of reviewing and completing the report the following week when they were both on duty. *Id.* Although Officer Kline should have included in the report that he searched

5

First, the arbitrator found that Officer Kline conducted a warrantless search that was not in "strict accordance" with the Manual provision addressing "arrests, searches, and seizure." R.R. at 526a. Second, the arbitrator found that Officer Kline lied to the Township's investigator about the warrantless search, which qualified as abuse of process as defined in the Manual. *Id.* Although the arbitrator found these charges supported by the evidence, the arbitrator indicated that he was "disinclined to believe that discharge [wa]s justified in this instance," and instead that there were "very good reasons for forbearance." *Id.* at 527a.

In support of his decision, the arbitrator provided the following findings regarding Officer Kline:

> First, [Officer] Kline has been described as an "eager" and "motivated" officer. He has worked his way up the law enforcement career ladder from part-time officer to sheriff's officer, to a position in one of Chester County's premier communities. From observing his testimony, I am totally convinced he wants nothing more than to be an outstanding police officer. Indeed from his demeanor at the hearing, I have full confidence in his explanation that his emotions got the better of him and his search of the bag was compelled by a conviction the police had prevailed in thwarting crime and a desire to see just how much illegality had been interdicted.
>
> Second, Officer Kline has no previous disciplinary record with the Township, including both malfeasance and non-feasance as well as time and attendance issues. There is no indication whatsoever that the Township had problems with him prior to this matter.

---

the bag, the arbitrator explained that the report was "not inaccurate, nor did it contain untruths"; the problem was that Officer Kline omitted the fact that he searched the bag without a warrant. *Id.* The arbitrator believed that Officer Kline expected to finalize the police report after he met with Sergeant Balben the following week and it would have been added at that time, but Officer Kline never had the chance to make the change. *Id.*

6

Third, the Township's taxpayers have invested considerably in Officer Kline's success, providing him with initial field training followed by specialized training as needed, notably the report writing class he was sent to and completed at Penn State and counseling by his superiors on what appears to be the lone weakness in his performance. His termination at this point would render all that effort and expense futile.

Last, the recruitment of persons who are as truly committed to police work as Officer Kline has become increasingly difficult, even in [d]epartments as attractive as the Township's. Fewer and fewer good people are willing to embark on and endure in a career in which on any day one may be required to save a life, take a life, or give a life. Just as few are willing to deal with the conflicts, gore, and tragedy officers witness on a regular basis.

R.R. at 527a-28a. Based on these findings, the arbitrator reasoned:

[Officer] Kline's failings here are not so serious as to permanently deprive the Township of a good officer. The progressive disciplinary system adopted by the Department accommodates the wrongs he committed while at the same time retaining his potential. It should be applied.

Given all the foregoing, I find there is cause for discipline under the [Manual] and the Police Tenure Act which is incorporated into the [Manual], both of which have been incorporated into the [CBA]. However, the nature of the offenses and the specific malfeasance underlying each, is such that discharge is not supportable, whether the offenses are viewed jointly or severally. This officer brings an enthusiasm and dedication to the job the Township would have a hard time duplicating in another hire. However, while I am convinced he is redeemable, he must be impressed, with the serious nature of the things with which he has been charged, and the Department must impress the rest of its personnel of the seriousness of the infractions that occurred here.

7

*Id*. at 528a. The arbitrator issued an award directing that Officer Kline "be considered to be suspended without pay or benefits from January 7, 2019[,] until the earlier of January 1, 2020[,] or the date the Township decides to hire another full-time officer, in which case it must first offer the position to Officer Kline, barring some separate disqualification he may have from municipal police service in the Commonwealth."[8] *Id*. at 529a.

On October 23, 2019, the Township filed a petition to vacate the arbitration award with the trial court. R.R. at 531a-43a. The Township asserted that the arbitrator "exceeded his authority by improperly substituting his own discretion for that of the Township when he revised the discipline." *Id*. at 539a. Further, the Township asserted that the arbitrator violated its due process rights by relying on evidence not in the record to support his decision to revise Officer Kline's termination. *Id*. at 543a.

The trial court, however, disagreed with the Township and entered an order denying the Township's petition and upholding the award. *Id*. at 600a. In doing so, the trial court explained that the arbitrator did not exceed his authority when he entered the award because he "directed [Officer] Kline's termination be converted to a year[-]long suspension, which is not illegal and does not violate any statute. It is an act that the Township could have voluntarily undertaken and is a term and condition of employment under Act 111." *Id.* at 596a. The trial court rejected the Township's argument that the arbitrator ignored the plain language of

---

[8] The arbitrator further indicated that upon his re-hire, Officer Kline was to be considered in probationary status for a period of two years during which any proven violation of a Class I offense, as defined and written in the Manual, would result in his immediate dismissal. R.R. at 529a.

8

the CBA because, under the limited scope of review, the trial court is "prohibited from questioning the reasonableness of the arbitrator's interpretation of a [CBA]." *Id.*

The trial court also rejected the Township's due process argument and explained, as follows:

> Despite trying to cast its complaint in terms of due process to bring it within our scope of review, the gravamen of the Township's contention is that there is insufficient record evidence upon which to base this rationale. The Township states its objections plainly in its brief:
>
> > An examination of the record reveals no evidentiary support for the majority of the [a]rbitrator's rationale.
>
> (Township Brief, p. 14). Questions relating to the quantum of evidence are unreviewable question[s] of law. Under the narrow certiorari scope of review, there is no authority to review an arbitrator's findings of fact. Under Act 111 grievance arbitration, the propriety of factual findings are not subject to any review, but are final.
>
> The types of constitutional violations contemplated by the narrow certiorari scope of review are fundamental, such as notice of claims and an opportunity to be heard. In contrast, the contention of the Township is that it disagrees with the reasoning put forth by the [a]rbitrator to support [] his decision. Such is not a due process violation.

R.R. at 599a-600a (citations, quotations, and footnotes omitted). The trial court further noted in footnote two of its decision that "[a] review of the record demonstrates that there is support for the [a]rbitrator's reasons first through third." *Id.* at 600a. The Township then brought this appeal.

9

In Act 111 cases, our scope of review is limited to "narrow certiorari," which allows inquiry only into: (1) the jurisdiction of the arbitrator; (2) the regularity of the proceedings; (3) whether the arbitrator exceeded his powers; or (4) the deprivation of constitutional rights. *Pa. State Police v. Pa. State Troopers' Ass'n (Betancourt)*, 656 A.2d 83, 90 (Pa. 1995). If an arbitration award cannot be vacated on one of these bases, then it must be upheld. *Id.* A mere error of law is insufficient to support a court's decision to reverse an Act 111 arbitrator's award. *Appeal of Upper Providence Police Del. Cty. Lodge #27 Fraternal Order of Police*, 526 A.2d 316, 322 (Pa. 1987). Here, the Township contends that the arbitrator exceeded his powers and deprived the Township of constitutional rights when he entered the award and, therefore, the arbitrator's award should have been vacated by the trial court. Township's Brief at 26.

First, the Township argues that the arbitrator exceeded his powers when he revised the Township's discipline by reducing Officer Kline's termination to a one-year unpaid suspension. Township's Brief at 14. It is well-established that an arbitrator's powers are limited. *Pa. State Police v. Pa. State Troopers Ass'n (Smith)*, 741 A.2d 1248, 1252 (Pa. 1999). An arbitrator may not mandate that an illegal act be carried out; he or she may only require a public employer to do that which the employer could do voluntarily. *Id.*; *Bensalem Township v. Bensalem Twp. Police Benevolent Ass'n, Inc.*, 803 A.2d 239, 242 (Pa. Cmwlth. 2002). An arbitrator's award "must encompass only terms and conditions of employment and may not address issues outside of that realm." *Smith*, 741 A.2d at 1252. Terms and conditions of employment are matters subject to collective bargaining, which include employee compensation, hours, working conditions, retirement, pension,

10

and other benefits. *City of Philadelphia v. Int'l Ass'n of Firefighters, Local 22*, 999 A.2d 555, 569 (Pa. 2010).[9]

Here, the arbitrator's award involved a term of employment and did not require the Township to perform an illegal act. Notably, the Township could have voluntarily imposed a one-year suspension instead of terminating Officer Kline, pursuant to the Manual. *See Smith*, 741 A.2d at 1251 (holding that arbitrators' orders reinstating troopers did not exceed their powers as the orders related to terms and conditions of employment); *Betancourt*, 656 A.2d at 90. The arbitrator's award did not force the Township to do something either not within its authority or prohibited by law. *N. Berks Reg'l Police Comm'n v. Berks Cty. Fraternal Order of Police, Lodge #71*, 230 A.3d 1022, 1035-36 (Pa. 2020). Therefore, the trial court did not err in finding that the arbitrator did not exceed his authority in this regard. *Id.*

The Township nevertheless asserts that the award was improper because it violated the plain language of Section 8.4 of the Manual,[10] which states that "[t]he ultimate authority to impose disciplinary action rising to the level of suspension, demotion or termination rests exclusively with the Board. . . ."

---

[9] An arbitrator exceeds his or her authority by entering an award that infringes upon an employer's managerial prerogatives that are not subject to collective bargaining, including standards of service, overall budget, use of technology, organizational structure, and the selection and direction of personnel. *City of Philadelphia*, 999 A.2d at 570.

[10] The parties agree that the CBA incorporates and includes the terms and conditions of the Manual. R.R. at 533a. The CBA states that

> [t]hough not written for word herein, nonetheless, the Personnel Regulations, Township of Uwchlan, approved by the Board . . . as Resolution No. 80-2, enacted February 1, 1980, as amended, *and also the Police Manual, are hereby incorporated herein as an integral part of this Agreement*.

*Id.* at 381a (emphasis added).

11

Township's Brief at 17; R.R. at 477a. The Township argues that the arbitrator does not have the authority to issue a suspension or rescind a termination if the Board had a factual basis for imposing the discipline and that neither the Union nor the trial court "point to any language in the CBA, or in the law, vesting the [a]rbitrator with such authority." Township's Brief at 18. The Township asserts that once the arbitrator ascertained that there was a "legitimate factual basis" to conclude that Officer Kline committed "multiple" Class I offenses, Section 8.4 of the Manual required his analysis to end. *Id.* The Township asserts that the arbitrator "exceeded his authority by infringing upon the [Board's] exclusive power to suspend, demote or terminate." *Id*. at 18-19.

However, the Township's argument is simply a challenge to the arbitrator's interpretation of the Manual, the terms of which are incorporated into the CBA. R.R. at 533a; *see supra* note 10. Where the resolution of an issue turns on the interpretation of the CBA, we are bound by the arbitrator's determination, even though we may find it to be incorrect. *City of Scranton v. Fire Fighters Local Union No. 60 of Int'l Ass'n of Fire Fighters, AFL-CIO*, 923 A.2d 545, 549 (Pa. Cmwlth. 2007); *Township of Ridley v. Fraternal Order of Police Lodge No. 27*, 718 A.2d 872, 874 (Pa. Cmwlth. 1998). This Court may not question the reasonableness of an arbitrator's interpretation of a collective bargaining agreement. *Township of Ridley*, 718 A.2d at 874.

Here, the arbitrator determined that, pursuant to the Manual, he could evaluate and modify the discipline imposed on Officer Kline by the Township. The Manual provides that "[t]he decision of the [Board] is *final on all* administrative and *disciplinary matters* that *do not affect the officer's pay*." Manual § 9.3.4; R.R. at 490a (emphasis added). The Manual also sets forth a grievance procedure that

12

includes a "right to appeal." *See* Manual §§ 8.8, 9.3.5; R.R. at 481a, 490a.[11] Because the Board's decision to terminate Officer Kline affected his pay, Officer Kline clearly had a right to appeal that decision.

During his review of this matter, the arbitrator found that Officer Kline committed two Class I offenses. R.R. at 526a-27a. The Manual provides that "[p]rogressive discipline will be administered except in severe violations that require suspension or dismissal." Manual § 8.3; R.R. at 476a.[12] Class I offenses "*may* lead to disciplinary action up to and including dismissal," but do "not automatically entail dismissal" as the "actual disciplinary action will reflect the circumstances of the violation and past pertinent violations." Manual § 8.9.1; R.R. at 481a (emphasis added). Though Officer Kline committed two Class I offenses, the arbitrator

---

[11] Section 8.8 provides:

> Nothing in these provisions should be interpreted to deny the sworn officer a right to appeal as provided under the Police Tenure Act, No. 144, or this [Manual], or any and all of the applicable resolutions, ordinances, federal, and state laws.

Manual § 8.8; R.R. at 481a. Section 9.3.5 similarly provides "[n]othing in this provision should be interpreted to deny the officer the right to appeal as provided under the Police Tenure Act . . . or the [CBA]." Manual § 9.3.5; R.R. at 490a.

[12] The penalties provision of the Manual explains:

> The term "disciplinary action" refers to the assessing of penalties for violation of Departmental and legal requirements. Progressive discipline will be administered except in severe violations that require suspension or dismissal. Repeated violations that indicate a clear disregard for the intent of the [M]anual may be grounds for suspension or dismissal.

Manual § 8.3; R.R. at 476a. This provision further outlines the following progressive penalties: oral reprimand, written reprimand, suspension without pay, reduction in rank, and removal from the Department. *Id.*

explained that discharge was not appropriate and there were "very good reasons for forbearance." R.R. at 527a.

In support of "forbearance," the arbitrator found, in relevant part, that Officer Kline had no previous disciplinary record and there was no indication that the Township had problems with him prior to this matter. *Id*. at 527a. The arbitrator explained that

> [Officer] Kline's failings here are not so serious as to permanently deprive the Township of a good officer. The *progressive disciplinary system adopted by the Department accommodates the wrongs he committed while at the same time retaining his potential*. It should be applied.

*Id*. at 528a (emphasis added). The arbitrator indicated "the nature of the offenses and the specific malfeasance underlying each, is such that discharge is not supportable, whether the offenses are viewed jointly or severally." *Id*. Further, the arbitrator observed that Officer Kline brings "an enthusiasm and dedication to the job the Township would have [] a hard time duplicating in another hire." *Id*. Based on the foregoing, the arbitrator concluded that Officer Kline's conduct did not warrant termination. The trial court did not err by rejecting the Township's argument that the arbitrator exceeded his authority, and we are bound by the arbitrator's determination in this matter. *City of Philadelphia v. Fraternal Order of Police Lodge No. 5 (Breary)*, 932 A.2d 274, 280 (Pa. Cmwlth. 2007) (providing that where resolution of an issue "depends upon fact-finding or upon the interpretation of the collective bargaining agreement, we apply the extreme standard of deference applicable to Act 111 awards; that is, we are bound to the arbitrator's determination of these matters"), *aff'd*, 985 A.2d 1259 (Pa. 2009).

14

The Township further argues that the arbitrator violated its procedural due process rights because the arbitrator based his decision to revise Officer Kline's discipline on "extra-record evidence." Township's Brief at 14, 20-21. Specifically, the Township argues

> [a]n examination of the record reveals *no evidentiary support for the majority of the* [*a*]*rbitrator's rationale.* At the hearing before the [a]rbitrator, there was *no evidence adduced by either party* that [Officer] Kline wants nothing more than to be an outstanding police officer; [T]ownship taxpayers' considerable investment in [Officer] Kline's success; or the [a]rbitrator's conclusion that it is difficult for the Township to recruit qualified officers. The [a]rbitrator himself cited to no *record evidence* supporting *any of these findings*, which formed the basis for his decision to reduce [Officer] Kline's termination from employment to a one-year unpaid suspension.

Township's Brief at 21-22 (emphasis added, quotations omitted). As stated by the trial court, "the gravamen of the Township's contention is that there is insufficient record evidence upon which to base this rationale." R.R. at 599a.

We agree with the trial court's statement that, in essence, the Township is challenging the sufficiency of the evidence upon which the arbitrator made certain factual findings, and that the Township has not asserted a constitutional due process claim. It is well established that under the narrow certiorari scope of review, the propriety of the arbitrator's factual findings are not subject to *any* review, but are final. *Pa. State Police v. Pa. State Troopers' Ass'n (Keyes)*, 54 A.3d 129, 134 (Pa. Cmwlth. 2012); *Fisher v. Pa. State Police* (Pa. Cmwlth., No. 744 C.D. 2007, filed January 15, 2008), slip op. at 12, n.11 (providing that "[w]e are without authority to

15

review the arbitrator's findings of fact");[13] *see also City of Pittsburgh v. Fraternal Order of Police Fort Pitt Lodge No. 1*, 764 A.2d 101, 103 (Pa. Cmwlth. 2000) (providing that an "[a]ppellate court may not disregard an arbitrator's findings of fact or contract interpretation if the arbitrator is even arguably construing or applying the contract and acting within the scope of his or her authority").

Based on the foregoing, the Township's assertion that the arbitrator violated its due process rights by relying on extra-record evidence is not supported. Moreover, the Township attended the hearing, was represented by counsel, presented its case with witnesses and exhibits, and cross-examined Officer Kline as well as the Union's other witnesses. R.R. at 3a-5a. As such, the Township has failed to demonstrate how the arbitrator, in actuality, violated its right to a full and fair hearing.[14] Because the Township has not established a deprivation of constitutional rights, the trial court did not err in giving deference to the arbitrator's award. *Betancourt*, 656 A.2d at 90.

Accordingly, we affirm.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[13] Pursuant to Commonwealth Court Internal Operating Procedure Section 414(a), 210 Pa. Code § 69.414(a), unreported panel decisions of this Court may be cited for their persuasive value.

[14] *Cf. Breary*, 985 A.2d at 1274 (holding that the City raised a due process claim to allow the court's review where the arbitrator issued a discovery sanction against the City preventing it from presenting any witnesses at the hearing, and where the arbitrator relied, in large measure, on violations that occurred in other cases to support his ruling).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Uwchlan Township, Pennsylvania,     :
               Appellant     :
                           :
       v.             :
                           :   No. 259 C.D. 2020
Uwchlan Township Police Association  :

## O R D E R

AND NOW, this 9th day of October, 2020, the January 27, 2020 order of the Chester County Court of Common Pleas is AFFIRMED.

 

_____
CHRISTINE FIZZANO CANNON, Judge