646 A.2d 1263

CITY OF PHILADELPHIA, OFFICE OF HOUSING
AND COMMUNITY DEVELOPMENT

v.

AMERICAN FEDERATION OF STATE, COUNTY AND
MUNICIPAL EMPLOYEES, LOCAL UNION 1971.

APPEAL OF OFFICE OF HOUSING AND COMMUNITY
DEVELOPMENT, Appellant.

Commonwealth Court of Pennsylvania.

Argued May 10, 1994.

Filed Aug. 4, 1994.

Reargument Denied Oct. 4, 1994.

Ralph H. Colflesh, Jr., for appellant.

Thomas H. Kohn, for appellee.

Before McGINLEY and KELLEY, JJ., and LORD, Senior Judge.

KELLEY, Judge.

The Office of Housing and Community Development for the City of Philadelphia (OHCD) appeals from an order of the Court of Common Pleas of Philadelphia County (1) denying its petition to vacate an arbitration award; (2) granting the petition to confirm the arbitration award filed by the American Federation of State, County & Municipal Employees (AFSCME), Local Union No. 1971; (3) entering judgment upon the award of the arbitrator; and (4) granting AFSCME costs and attorney's fees. We affirm in part and reverse in part.

OHCD is the City of Philadelphia's (city) executive housing agency and its executive director is the city's policy maker for housing issues. OHCD prepares a yearly budget for submission to city council which then authorizes OHCD to accept money from the Department of Housing and Urban Development, including community development block grant (CDBG) funds. OHCD allocates part of the CDBG funds it receives to the city's Redevelopment Authority (RDA) and Philadelphia Housing Development Corporation (PHDC) for their purposes.

OHCD also distributes several million dollars of CDBG funding for grants to private non-profit housing corporations throughout Philadelphia of which $1.75 million is granted to the Philadelphia Rehabilitation Plan (PRP). Altogether, OHCD expends 90%–95% of its total budget on PHDC, RDA, and the private non-profit housing corporations making it essentially a grantor organization.

Local Union No. 1971 (union) of AFSCME has been the certified collective bargaining representative of the nonprofessional employees of the OHCD since 1982. The union and OHCS entered into a collective bargaining agreement that by its terms was effective from July 1, 1988 through June 30, 1992. On July 2, 1990, the union filed a grievance claiming that OHCD had violated Article XXIX of the collective bargaining agreement by engaging in prohibited subcontracting by funding the PRP and the Committee for Dignity and

Fairness for the Homeless House Development Incorporated (Dignity Housing). The union charged that OHCD contracted with PRP and Dignity Housing to prepare work write-ups, cost estimates and inspections.

Article XXIX of the collective bargaining agreement provides that:

### Article XXIX—*SUBCONTRACTING OF WORK PRESENTLY PERFORMED BY THE BARGAINING UNIT*

The Employer shall not contract out work presently performed by Employees within the unit represented by Local 1971, unless it determines that it is more economical for the Employer to contract out to a Union Contractor, rather than to have the work performed by the Employees within the unit.

When the Employer contemplates contracting out such work, it shall give no less than thirty (30) days' prior written notice to the Union of the Employer's desire to contract out such work in order to afford the Union full opportunity to discuss the economic aspect of the contracting out.

No Bargaining Unit Employees will be laid off as a result of subcontracting performed in accordance with this article.

This article shall not apply to the types of programs and projects that

1. are usually and customarily funded but not performed by the employer; or,
2. the performance of which does not involve in whole or in substantial part tasks regularly performed by Bargaining Unit members.

The grievance was processed through the contractual grievance procedure and on October 19, 1990, the union made a demand for arbitration. The arbitrator found that the city had violated Article XXIX of the collective bargaining agreement by failing to provide the mandatory thirty-day notice contained therein and by subcontracting the bargaining unit work of unit members to the PRP and with Dignity Housing.

The arbitrator then fashioned a remedy which consists basically of three parts. First, the arbitrator directed OHCD

and the union to immediately work out a method to assign the appropriate bargaining unit members all inspection, equal employment compliance and clerical duties related to inspection and equal employment compliance that are or may currently be required of PRP, Dignity Housing, or any other recipient by applicable contract with OHCD.

Second, the arbitrator ordered OHCD to cease and desist from further contracting to any recipient of OHCD monies any of the type and nature of duties performed by bargaining unit members.

Third, in order to remedy past violations of the agreement and any that may occur until compliance with the award was achieved, the arbitrator fashioned a remedy that would protect the jobs and positions of the bargaining unit for at least six years, the same period of time that the city subcontracted bargaining unit work to PRP and Dignity Housing. This remedy included the establishment of a fund which represented all monies and fringe benefits lost by bargaining unit employees as a result of the subcontracts. The fund was to be utilized to pay equivalent pay to any employees in the class specifications that were at issue in the arbitration who may be subject to layoff, at the conclusion of which the corpus of the fund would revert to OHCD, with any accrued interest to be remitted to the union. The amount of the fund was to be determined by a formula based upon the cash value of payments by OHCD to PRP and Dignity Housing, plus the cash value of payments that would have been made to certain employees but for the breach of the collective bargaining agreement.[1]

The OHCD then filed a petition to vacate the arbitration award with the trial court. In response, the union filed a petition to confirm the arbitration award and a petition for attorney's fees and costs. After hearing argument on the respective petitions, the trial court determined that the arbitrator's decision and remedy were drawn from the essence of

---

1. During the proceedings before the trial court, it was stated by the city that the amount of the fund was estimated to be approximately $800,-000 with interest over six years, amounting to approximately $250,000.

the collective bargaining agreement. Accordingly, the trial court upheld the arbitrator's award and granted attorney's fees and costs to the union.

On appeal to this court, the OHCD raises the following issues: (1) whether the trial court erred in upholding the arbitrator's decision that OHCD subcontracted bargaining unit work to city agencies funded by OHCD in violation of the collective bargaining agreement; (2) whether the trial court erred in concluding that the arbitrator's remedy is reasonable in that the award is contrary to our Supreme Court's decision in *Midland Borough School District v. Education Association,* 532 Pa. 530, 616 A.2d 633 (1992); and (3) whether the trial court erred as a matter of law in awarding the union attorney's fees and costs.

It is well settled that the appropriate standard of judicial review of interest labor arbitration awards is the essence test. *See United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Community College of Beaver County v. Society of Faculty,* 473 Pa. 576, 375 A.2d 1267 (1977). In *Leechburg Area School District v. Dale,* 492 Pa. 515, 424 A.2d 1309 (1981), our Supreme Court explained that

> The essence test requires a determination as to whether the terms of the agreement encompass the subject matter of the dispute. Where it is determined that the subject matter of the dispute is encompassed within the terms of the agreement, the validity of the arbitrator's interpretation is not a matter of concern to the court.

Therefore, if the arbitrator's decision draws its essence from the collective bargaining agreement, this court is powerless to overturn it on appeal. *United Steelworkers; Leechburg Area School District.*

In the present case, the arbitrator's decision that the city had violated Article XXIX of the collective bargaining agreement by subcontracting out bargaining unit work draws its essence from the collective bargaining agreement. As the trial court pointed out, the issue of subcontracting was perti-

nent to the collective bargaining agreement. It is undisputed by the plain language of Article XXIX that the agreement encompassed subcontracting, the subject matter of this dispute. Accordingly, we may not address the validity of the arbitrator's interpretation of Article XXIX of the collective bargaining agreement.

However, whether the arbitrator's remedy draws its essence from the collective bargaining agreement is not so easily disposed. The arbitrator fashioned a remedy which, in part, extends beyond the expiration of the collective bargaining agreement. The parties agree that the award's establishment of a fund will extend until April 6, 1999. As a result, OHCD argues, the remedy is contradictory to our Supreme Court's decision in *Midland Borough.* We agree.

One of the issues addressed in *Midland Borough* was whether it was within the jurisdiction and power of the arbitrator to implement a remedy which was to extend beyond the expiration of the controlling collective bargaining agreement. As presented by OHCD, this court is faced with the same issue in the instant case.

As our Supreme Court stated in *Midland Borough:*

Although traditionally a great deal of deference is to be given to decisions of arbitrators, courts nonetheless have the obligation to review those decisions when properly called upon to do so.

\* \* \* \* \* \*

[T]he question of jurisdiction presents an issue separate from, and not controlled by, the fundamental axiom that awards of arbitrators are of no concern for the courts.

*Midland Borough,* 532 Pa. at 537, 616 A.2d at 636.

In *Midland Borough,* the arbitrator fashioned a remedy that required the school district to re-open an already closed school and re-employ any teachers who desired to be re-employed, by the 1987–88 school year. However, the control-

ling collective bargaining agreement and all rights, duties, and powers flowing from it expired on August 31, 1986.

The Supreme Court in *Midland Borough* held that

Compliance with the arbitrator's decision would result in a remedy being fashioned well beyond the temporal parameters by which the parties to the collective bargaining agreement agreed to be bound. This would be contrary to the fundamental rule that the power of the arbitrator is defined and limited by the terms of the applicable collective bargaining agreement.... Furthermore, the "essence test" also dictates that judicial review of an arbitration award must focus on the question of whether the *award* represented a *legitimate, reasonable interpretation of the collective bargaining agreement.* ... (Emphasis in original.)

This Court's condoning such activity would allow arbitrators to intrude freely upon those bargaining powers traditionally vested in the parties themselves. Thus, the freedom to renegotiate the terms of respective bargaining agreements over time would be severely limited by an arbitrator who could design the terms of the contract and intrude upon the rights of the parties. We do not believe this legitimately expresses the intentions of the parties herein and cannot be deemed to emanate from the "essence" of the collective bargaining agreement that expired on August 31, 1986.

*Id.* at 540–41, 616 A.2d at 638–39 (footnotes and citations omitted).

In the present case, the arbitrator fashioned a remedy, in part, that extends more than six years beyond the expiration of the collective bargaining agreement on June 30, 1992. In accordance with the above-stated reasoning of *Midland Borough,* this portion of the arbitrator's remedy cannot be deemed to emanate from the essence of the collective bargaining agreement as it extends beyond the temporal parameters by which the OHCD and union agreed to be bound.[2]

2. However, the remaining portions of the arbitrator's remedy, as stated previously in this opinion, must stand.

The union argues that *Midland Borough* is not controlling because the Supreme Court in that case limited its holding to remedies which were too broadly designed and intrusive to be deemed legitimate. The union contends that the remedy in the present case was neither too broadly designed or too intrusive to be deemed illegitimate.

It is true that the Supreme Court in *Midland Borough* pointed out, in a footnote, that under certain circumstances particular remedies awarded may in fact continue in effect beyond the expiration of the controlling agreement, but the award by the arbitrator at issue was too broadly designed and intrusive to be deemed legitimate. *Id.* at 540 n. 3, 616 A.2d at 638 n. 3. The Supreme Court noted that "focus on the scope and nature of a particular remedy to be awarded is a paramount consideration in analyzing its propriety." *Id.* The Supreme Court further pointed out an example of the *limited* type of remedies which may survive the expiration of collective bargaining agreement such as the requirement that an employer continue to pay medical benefits which were provided by an expired collective bargaining agreement. *Id.*

We disagree with the union's characterization of the Supreme Court's holding in *Midland Borough.* While the Supreme Court did state that the award in that case was too broadly designed and intrusive to be deemed legitimate, the Supreme Court did not hold that to be the standard in determining if a remedy may survive the expiration of a collective bargaining agreement. In fact, the footnote indicates that only a limited type of remedies may survive the expiration of a collective bargaining agreement and we believe that the remedy awarded in the instant case is not one of the limited types referred to by the Supreme Court in *Midland Borough.*

■ Finally, we will address the contention of OHCD that the trial court erred in awarding attorney's fees and costs to the union. OHCD argues that its conduct in commencing this action was by no means arbitrary, vexatious or in bad faith in that its arguments that the arbitrator's decision was not

derived from the essence of the collective bargaining agreement were not asserted in bad faith. *See* 42 Pa.C.S. § 2503.

The trial court provided no reasoning as to why it awarded attorney's fees and costs to the union. The trial court merely stated that since it granted the petition to confirm the award, it must award attorney's fees in this matter. Unless the trial court found the proceedings to be in bad faith, vexatious or arbitrary, it had no authority to award attorney's fees. In light of our holding that the arbitrator's remedy, in part, was not drawn from the essence of the collective bargaining agreement and, therefore, cannot be upheld in total, we find that the actions of OHCD were not in bad faith and reverse the trial court's award of attorney's fees and costs to the union.

Accordingly, the trial court is (1) affirmed with respect to its determination that the arbitrator's decision that the city violated the provisions of the collective bargaining agreement by subcontracting out bargaining unit work was derived from the essence of the agreement; (2) reversed with respect to its determination that the portion of the arbitrator's remedy which extends beyond the expiration of the collective bargaining agreement was drawn from the essence of the agreement; and (3) reversed with respect to its award of attorney's fees and costs to the union in this matter.

### ORDER

NOW, this 4th day of August, 1994, the decision and order of the Court of Common Pleas of Philadelphia County, entered October 12, 1993, is hereby:

(1) reversed with respect to its determination that the portion of the arbitrator's remedy which extends beyond the expiration of the controlling collective bargaining agreement was drawn from the essence of the agreement;

(2) reversed with respect to its award of attorney's fees and costs to the American Federation of State, County & Municipal Employees, Local Union No. 1971; and

(3) affirmed in all other aspects.