City of Philadelphia,               :
                                        :
                  Appellant   :
                                          :
             v.               :  No. 1243 C.D. 2021
                                        :  Argued:  March 6, 2023
Fraternal Order of Police,     :
Lodge #5                   :


BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE STACY WALLACE, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                              FILED:  June 28, 2023


        The City of Philadelphia (Employer) appeals from an order of the Philadelphia County Court of Common Pleas (trial court) that denied Employer's petition to vacate an arbitration award (arbitration award).  At issue is Employer's dispute with the Fraternal Order of Police, Lodge #5 (Union) over whether Arbitrator James Darby (arbitrator) exceeded his authority when he reduced a 30-day suspension to a 5-day suspension for police officer James McGorry (Grievant) for a single rule violation, after he found that Employer failed to prove that it had just cause to discipline Grievant for repeated rule violations.  Employer presents two questions for review:  (1) whether the trial court erred in denying Employer's petition to vacate an arbitration award where the arbitrator exceeded his authority by imposing a five-day suspension for an offense Employer did not charge against

Grievant; and (2) whether the trial court erred in remanding the dispute to the arbitrator to remove reference to the new disciplinary charge while leaving the five-day suspension intact. After careful review, we affirm.

The facts as found by the arbitrator are as follows and are not in dispute. Grievant began working for Employer's Police Department (Department) as a police officer in 2006, and he had a good employment record until the incidents in question here. Reproduced Record (R.R.) at 44a.[1] On July 13, 2018, while Grievant and another officer were serving an arrest warrant on Chanel Freeman (C.F.), Grievant took C.F.'s cell phone number and contacted her a few days later, and they began a consensual romantic and sexual relationship that lasted a few weeks. *Id.* at 45a. Their relationship involved a few dates and hundreds of text exchanges, including sexually graphic pictures. *Id.* at 45a.

On August 22, 2018, C.F. filed a complaint with the Department's internal affairs division, alleging that Grievant sexually assaulted her and informed her he would "look into her case for her." R.R. at 45a. The Department's investigation revealed that Grievant texted C.F. while he was on duty, in which he asked C.F. "to come out of the back of her residence and give him a hug." *Id.* While searching Grievant's personal cell phone, the Department discovered 38 crime scene photos and videos, which included images of firearms, narcotics, victims that were shot, and deceased persons, some of which were from active crime scenes that Grievant had worked on, and some of which were sent to him by other officers. *Id.*

---

[1] Pa.R.A.P. 2173 states: "Except as provided in Rule 2174 (tables of contents and citations), the pages of . . . the reproduced record . . . shall be numbered separately in Arabic figures and not in Roman numerals: thus 1, 2, 3, etc., followed in the reproduced record by a small a, thus 1a, 2a, 3a, etc." Although the pagination of Employer's Reproduced Record does not conform to the foregoing Rule, we will cite to the relevant pages as required by the Rule. The arbitration award may be found in the Reproduced Record (R.R.) at 43a-53a.

Grievant conceded that once he had the opportunity to review the photos, he should have deleted them, which he did not do. *Id.*

On July 29, 2019, the Department issued its investigative report, in which it concluded that C.F.'s sexual assault claim was unfounded and that Grievant had not committed any crimes. R.R. at 46a. However, the Department found that Grievant's actions violated several of the Department's rules and regulations. *Id.* Specifically, the Department determined that Grievant had abused his authority by engaging in a romantic relationship with C.F., had violated the Department's social media policy by texting C.F. while he was on duty, and had violated Department Directive 4.1: Responsibilities at Crime Scenes (Directive 4.1), by using his personal cell phone to record crime scenes and evidence.[2] *Id.* After a Police Board of Inquiry hearing, the Department determined that Grievant should be reprimanded for neglect of duty (for texting C.F. while on duty), suspended for 5 days without pay for conduct unbecoming (relating to his relationship with C.F.), and suspended for 30 days without pay for conduct unbecoming (for repeated violations of Directive 4.1

---

[2] The arbitrator noted that Directive 4.1 prohibits officers from using their personal cell phones to record crime scenes and evidence. R.R. at 46a. The arbitrator described Directive 4.1, in relevant part, as follows:

> F. The use of privately owned cell phone cameras, cameras, video recorders or any other electronic recording device to record crime scenes, potential evidence, suspects, offenders[,] or victims while on duty will only be used in exigent circumstances when departmental equipment is unavailable and there is no other means to record the item or event.
>
> 1. Use of non-departmental equipment by employees will be documented on the investigation report by the employee.

*Id.* at 47a, 51a. The full text of Directive 4.1 is not included in either the Reproduced Record or the Original Record, but the parties do not dispute the arbitrator's description of Directive 4.1.

relating to his personal cell phone containing numerous crime scene photos and videos). *Id.* On January 3, 2020, the Police Commissioner notified Grievant that she was imposing the reprimand recommended by the Police Board of Inquiry for neglect of duty, a 5-day suspension for conduct unbecoming for his relationship with C.F. as an abuse of authority,[3] and a 30-day suspension for conduct unbecoming for repeated violations of Directive 4.1 for keeping crime scene photos and videos on his personal cell phone. *Id.*

On February 13, 2020, the Union filed a grievance alleging that Employer's discipline lacked just cause, which Employer denied. R.R. at 43a. The grievance proceeded to arbitration before the arbitrator, who held a virtual hearing on March 2, 2021, during which the parties were represented by counsel and presented testimony, evidence, and arguments. *Id.* at 44a. The parties stipulated to the following issue to be resolved by the arbitrator: "Did [Employer] have just cause to discipline [] Grievant []? If not, what shall the remedy be?" *Id.*

At the hearing, Employer presented testimony from internal affairs Sergeant James Lane, who testified that Grievant violated Directive 4.1, because Grievant admitted he never documented any of his crime scene recordings, and he did not assert that he needed to make recordings on his personal cell phone due to exigent circumstances. R.R. at 47a. The Union presented testimony from two police officers who testified that officers are expected to use their personal cell phones to perform their official duties because the Department does not provide officers with cameras to use at crime scenes. *Id.* These officers also testified that their supervisor

---

[3] Although the arbitrator incorrectly stated in his factual summary that the Police Commissioner increased the penalty for Grievant's abuse of authority violation from a 5-day suspension to a 30-day suspension, the rest of the arbitration award correctly states that Grievant received a 5-day suspension for this violation. R.R. at 46a, 50a-51a, 52a.

had asked them to take pictures with their cell phones at crime scenes to be shared on social media to show the community that officers were doing their jobs. *Id.* Grievant testified that he exercised "poor judg[]ment" by starting a relationship with C.F., but he denied using his position as an officer to make sexual advances to her. *Id.* at 47a-48a.

The arbitrator summarized the parties' positions, as follows. Employer argued that Grievant's discipline was supported by just cause, based on Grievant's admissions that he took pictures and videos of crime scenes on his personal cell phone, used poor judgment in starting a relationship with C.F., and texted C.F. while on duty. R.R. at 48a. Employer argued that Grievant admitted to taking multiple photos at crime scenes, which supported its charge of repeated violations of Directive 4.1 under Section 1-§020-10 of the Department's Disciplinary Code (Disciplinary Code) for repeated rule violations.[4] *Id.* The Union responded that there was no just cause for Employer's discipline. *Id.* The Union contended that Section 1-§020-10 of the Disciplinary Code should not apply to Grievant because he was never counseled that keeping crime scene images on his personal cell phone violated Departmental rules. *Id.* at 48a-49a. The arbitrator found that here, "the evidence shows that many of Grievant's colleagues and superiors knew that his cell phone contained such videos and pictures and encouraged him to keep taking pictures for law enforcement and publicity purposes." *Id.* at 49a. The Union also argued that Employer failed to prove that Grievant abused his authority by entering into a relationship with C.F. because there was no evidence Grievant used his

---

[4] The Disciplinary Code is part of the Collective Bargaining Agreement (CBA) between Employer and the Union. R.R. at 55a-243a. Section 1-§020-10 of the Disciplinary Code prohibits "[r]epeated violations of any Departmental rules or regulations," where the first offense is punishable by a 30-day suspension or dismissal, and the second offense is punishable by dismissal. *Id.* at 215a.

authority to force C.F. to do anything. *Id.* The Union further claimed that Employer should have counseled Grievant rather than reprimanding him over a *de minimis* violation of the social media policy, given Grievant's exceptional record. *Id.*

The arbitrator concluded that Employer had just cause to reprimand Grievant for neglect of duty by violating the Department's social media policy, based on Grievant's admission that he texted C.F. during work hours to come outside and give him a hug. R.R. at 50a. The arbitrator also determined that Employer had just cause to suspend Grievant for five days for conduct unbecoming, based on his admitted relationship with C.F. *Id.* at 51a. The arbitrator further found that although the relationship was consensual, Grievant "clearly used his position as an arresting officer to obtain [C.F.'s] phone number and pursue a relationship with her." *Id.* at 50a. The arbitrator concluded that Grievant's behavior "clearly created an appearance that he was compromising his position as a police officer and/or creating a conflict with his sworn duties." *Id.* at 51a.

As to the charge of conduct unbecoming for repeated violations of Directive 4.1, the arbitrator found that Grievant admitted to taking crime scene photos and videos on his personal cell phone, which is a violation of Directive 4.1. R.R. at 51a. The arbitrator concluded that even if other officers took crime scene photos on their cell phones, or Grievant's supervisors asked for such images, it does not explain why Grievant had failed to delete them from his cell phone or document them in his reports, as required by Directive 4.1. *Id.* The arbitrator was not persuaded that Grievant was unaware of this rule, as all officers are expected to be familiar with Departmental rules and regulations. *Id.* at 52a.

6

However, the arbitrator concluded that the Department failed to prove that Grievant *repeatedly* violated Directive 4.1, because it never called the violations to Grievant's attention. On this point, the arbitrator concluded as follows:

> However, in light of the undisputed evidence that Grievant's superiors did not call to his attention his open and notorious failure to abide by Directive 4.1, it would be unfair to sustain [Employer's] finding that he should be punished for repeatedly violating [] Directive [4.1]. Had management brought this violation to his attention sooner there is no evidence [] Grievant would have refused to bring himself within full compliance with Directive 4.1.

R.R. at 52a.

Accordingly, the arbitrator sustained in part and denied in part the Union's grievance. R.R. at 52a. The arbitrator concluded that Employer had just cause to reprimand Grievant for violating the social media policy and had just cause to impose a five-day suspension on Grievant for abuse of authority. *Id.* As to the violation of Directive 4.1, the arbitrator concluded:

> [W]hile [Employer] had just cause to discipline [] Grievant for violating Directive 4.1, it did not have just cause to do so for repeatedly violating the same. Thus, that portion of the 30-day suspension imposed for repeatedly violating Directive 4.1 shall be reduced to a [5]-day suspension without pay (for a violation of Section 5-§011-10, Neglect of Duty), for a total [10]-day suspension without pay.

*Id.* at 52a, 53a.

Employer filed a petition to vacate the arbitration award with the trial court, limited to the issue of whether the arbitrator exceeded his authority when he reduced Grievant's suspension from 30 days to 5 days for a single violation of

7

Directive 4.1.[5]  Trial Court Opinion, 2/2/22, at 1.[6]  As noted by the trial court, Employer conceded that although the arbitrator had some discretion, Employer objected to the form and not the substance of the arbitration award.  *Id.*  Following oral argument, the trial court confirmed the arbitration award, but remanded the matter to the arbitrator to modify his decision by deleting the parenthetical references to Grievant's violation of Section 5-§011-10 of the Disciplinary Code[7] for a single failure to comply with Directive 4.1, but leaving in place the five-day suspension. *Id.*

The trial court summarized the facts, focusing on the "repeated violations" charge.  Trial Court Opinion at 2-3.  The trial court explained that the CBA between Employer and the Union was covered by the Policemen and Firemen Collective Bargaining Act, commonly referred to as Act 111 (Act 111).[8]  *Id.* at 4-6. The trial court further explained that the CBA provides that police officer discipline must be consistent with Employer's Home Rule Charter and regulations of the Civil Service Commission, which vest in the Department the authority to supervise and discipline its police officers.  *Id.* at 5.  These rules provide the Police Commissioner with discretion to impose discipline on her officers.  *Id.*

---

[5] Employer did not seek to vacate the part of the arbitration award relating to discipline for the other two charges, so we will not discuss them further.

[6] The Trial Court Opinion may be found in the Original Record (O.R.) at 308-19.  Because the Original Record was filed electronically and was not paginated, the page numbers referenced reflect electronic pagination.

[7] Section 5-§011-10 of the Disciplinary Code prohibits any "[f]ailure to comply with any Police Commissioner's orders, directives, memorandums, or regulations; or any oral or written order of superiors[,]" where the first offense is punishable by a reprimand up to a five-day suspension, with increasing progressive discipline for subsequent offenses.  R.R. at 229a.

[8] Act of June 24, 1968, P.L. 237, No. 111, *as amended*, 43 P.S. §§217.1-217.12.

The Disciplinary Code specifies that

> [p]enalties recommended by either the Police Board of Inquiry or commanders for offenses listed shall be within the prescribed limits. The Disciplinary Code shall in no way limit any penalty which the Police Commissioner may impose. The Police Commissioner is the final authority on all disciplinary matters.

Trial Court Opinion at 5; *see also* R.R. at 207a. Pursuant to the CBA, when police disciplinary matters are subject to arbitration, the arbitrator does not have authority to "add to, subtract from[,] or in any way alter the terms of this contract, Act 111 arbitration awards or the scale of wages set forth herein." Trial Court Opinion at 5; *see also* R.R. at 142a.

The trial court summarized the applicable "narrow certiorari" scope of review applicable to Act 111 grievance arbitrations, discussed more fully below. Trial Court Opinion at 6-7. Under the applicable scope of review, the trial court opined that Employer must demonstrate either that the arbitration award does not involve a term or condition of employment, or that it required Employer to commit an illegal act. Trial Court Opinion at 8. The trial court rejected Employer's argument that disciplinary decisions involve an issue of managerial discretion, which would remove the issue from the arbitrator's authority, and held that employee discipline is a term or condition of employment that is subject to mandatory bargaining. *Id.* The trial court was unpersuaded that the arbitrator intruded on Employer's managerial functions by imposing his own discipline by invoking Section 5-§011-10 of the Disciplinary Code (single rule violation), because Employer did not charge Grievant under that Section. *Id.* The trial court rejected Employer's contention as a "hyper-technical argument" that "lacks merit and common sense." *Id.* The trial court explained that if it accepted Employer's

9

argument, managerial discretion would "in essence, be capable of swallowing the entire purpose of Act 111 and the narrow certiorari standard of review." *Id.* The trial court rejected this expansive reading, particularly in light of Employer's "concessions at oral argument," which he summarized as an objection to the "form" of the arbitrator's award, and not the result. *Id.* at 9.

The trial court opined that Employer "conceded at oral argument that the arbitrator had discretion to reduce [Grievant's] suspension from 30 days to 5 days for the violation, but the arbitrator did not have discretion to invoke a section of the [D]isciplinary [C]ode that was not part of the Police Commissioner's original punishment." Trial Court Opinion at 9. The trial court noted the following relevant exchanges between the court and counsel at oral argument.

> [UNION'S COUNSEL]: But the issue here isn't really [Grievant] because he's not a party in the matter. The issue is the integrity of this award and whether there's a basis to appeal it. And I think Your Honor hit on what the real underlying issue here is when you asked [Employer's counsel] whether in your view this is an all or nothing thing. There's either just cause for that penalty or that's it. So that's a fundamental disagreement between the parties. It's an interpretation of the CBA issue, and that's not something that this arbitrator found. He didn't find that he was constrained to only mitigate a penalty within the [D]isciplinary [C]ode charging guidelines attached to the CBA. [R.R. at 292a-93a.]
>
> [EMPLOYER'S COUNSEL]: The [P]olice [C]ommissioner's unfettered discretion to issue discipline in the direction of personnel is not a matter of collective bargaining. [R.R. at 297a.]
>
> THE COURT: [Counsel], let me just ask this. [Union Counsel] just noted, and I see what she referred to, where the arbitrator dropped in Section 5-[§]011-10 neglect of duty into the decision and the award. Hypothetically, what

if he did not do that? What if he just said it shall be reduced to a five-day suspension without pay and didn't have the parentheticals in there? At the beginning, you talked about how he just thumbed through and found a five-day suspension. What if he didn't reference any other section there? Would that change the analysis?

[EMPLOYER'S COUNSEL]: Your Honor, we would not be here before you. I think focusing on the penalty is the wrong thing. We're focusing on the disciplinary charges. That is entirely within the discretion of the [P]olice [C]ommissioner. If he had just dropped the penalty, it would be a little bit wacky, but we would not be here before you. [R.R. at 308a.]

THE COURT: Well, what is the heart of the issue? And I'm not trying to be flip about it. If you don't have an issue with the total of [10] days, [5] plus [5], and you don't take issue with the arbitrator's authority to say, well, I'm not going to penalize [30]; I'm going to penalize [5], but the issue is with these [8] words of whatever it is in a parenthetical, if we excise that from the decision and that would cure the issue, then what is the heart of the issue?

[EMPLOYER'S COUNSEL]: The heart of the issue that is the arbitrator exceeded his authority. [R.R. at 309a-10a.]

Trial Court Opinion at 9-10.

Based on counsel's statements at oral argument, the trial court "entered an order that reflected the respective positions of the parties, as understood by [the court]. This [c]ourt simply instructed the arbitrator to remove his references to Section 5-§011-10." Trial Court Opinion at 10. The trial court opined that the arbitrator was "well within his broad authority to modify the discipline that had been imposed by the Police Commissioner." *Id.* at 11. The trial court rejected Employer's argument over the arbitrator's reference to Section 5-§011-10 as a "nominal detail." *Id.* The trial court concluded that the "arbitrator's reason for invoking the new

11

disciplinary provision (Section 5-§011-10) is clearly understood in the context of the entire decision." *Id.* The trial court concluded that the arbitrator exercised his discretion and found that Grievant violated Directive 4.1 "on one occasion," but Employer failed to prove he repeatedly violated Directive 4.1. *Id.* "As a result, the arbitrator referenced Section 5-§011-10, as opposed to the 'Repeated Violations' offense []in Section 1-§020-10." *Id.* The trial court rejected Employer's argument that an arbitrator must choose "all or nothing" regarding discipline, and instead concluded that the arbitrator exercised his discretion to "impose what the arbitrator believes to be a fair punishment based on the facts developed at arbitration." *Id.* at 12.

As a result, the trial court concluded that the arbitrator did not exceed his authority when he modified Grievant's 30-day suspension to a 5-day suspension, because the modification was an exercise of the arbitrator's discretion under the CBA. Trial Court Opinion at 12. Employer then appealed the trial court's decision to this Court.

This Court recently stated and summarized the narrow certiorari scope of review as follows:

> In Act 111 cases, our scope of review is limited to "narrow certiorari," which allows inquiry only into: (1) the jurisdiction of the arbitrator; (2) the regularity of the proceedings; (3) whether the arbitrator exceeded his powers; or (4) the deprivation of constitutional rights. *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Betancourt)*, 656 A.2d 83, 90 (Pa. 1995). If an arbitration award cannot be vacated on one of these bases, then it must be upheld. *Id.* A mere error of law is insufficient to support a court's decision to reverse an Act 111 arbitrator's award. *Appeal of Upper Providence Police Delaware County Lodge #27 Fraternal Order of Police*, 526 A.2d 31[5], 322 (Pa. 1987).

12

*Uwchlan Township, Pennsylvania v. Uwchlan Township Police Association* (*Uwchlan Township*) (Pa. Cmwlth., No. 259 C.D. 2020, filed October 9, 2020), slip op. at 4.[9]

Further, as long as an arbitrator's award concerns terms and conditions of employment and does not require performance of an illegal act, or one that a party could not do voluntarily, the "authority" prong of narrow certiorari is "generally met." *City of Pittsburgh v. Fraternal Order of Police, Fort Pitt Lodge No. 1*, 224 A.3d 702, 712 (Pa. 2020). An argument that an arbitrator misinterpreted a CBA is not within the confines of the narrow certiorari review. *Id.* at 713. This Court's scope of review is a "plenary, non-deferential standard where the resolution of the issues turns on a question of law or application of law to undisputed facts." *City of Philadelphia v. Fraternal Order of Police Lodge No. 5*, 932 A.2d 274, 279 n.6 (Pa. Cmwlth. 2007).

As to the first issue, Employer argues that the arbitrator exceeded his authority because he imposed discipline for a Disciplinary Code violation with which Employer did not charge Grievant. Employer asserts that when the arbitrator found that Employer lacked just cause to discipline Grievant for repeated rule violations, he should have stopped there. Employer contends that when the arbitrator inserted a new charge into the arbitration award, he infringed on the Department's managerial rights to set standards of service for its officers, including the decision of what Disciplinary Code violations to charge.

The Union responds that under the narrow certiorari scope of review, the Court should affirm the trial court because the arbitration award does not require

---

[9] *See* Pa.R.A.P. 126(b) ("As used in this rule, 'non-precedential decision' refers to . . . an unreported memorandum opinion of the Commonwealth Court filed after January 15, 2008.  [] Non-precedential decisions . . . may be cited for their persuasive value.").

13

Employer to perform an illegal act or one that it could not have done voluntarily. The Union claims that the arbitrator decided the issue posed to him, as stipulated to by the parties, whether Employer had "just cause to discipline [] Grievant []? If not, what shall the remedy be?" R.R. at 44a. The Union submits that the arbitrator was within his authority to modify Grievant's discipline, and that such modifications are common in disciplinary cases that proceed to arbitration.

Employer's second issue is closely related to the first issue. As to the second issue, Employer argues that the trial court's remand, in which it modified the arbitration award to remove the two parenthetical references to Section 5-§011-10 of the Disciplinary Code, did not address Employer's objection. Employer maintains that the resulting arbitration award continues to exceed the arbitrator's authority because it levies a five-day suspension that is untethered to a specific Disciplinary Code violation. Employer argues that, in essence, the trial court allowed the arbitrator to rewrite the CBA.

As to the second issue, the Union responds that the trial court's remand to remove the parenthetical references to Section 5-§011-10 of the Disciplinary Code did not constitute error. The Union claims that the trial court corrected the form of the arbitration award based on his understanding of both Employer's and the Union's positions at oral argument. The Union rejects Employer's attempt to turn a garden-variety discipline mitigation decision made by an experienced arbitrator into an excess of authority when Employer does not meet the standards for narrow certiorari review.

Under the narrow certiorari scope of review applicable here, we conclude that the arbitrator did not exceed his authority when he issued the arbitration award. The purpose of Act 111 is to prevent arbitration awards "from

14

miring down in litigation." *Betancourt*, 656 A.2d at 89. The narrow certiorari scope of review applies to both interest arbitrations and grievance arbitrations under Act 111. *Id.* Interest arbitration occurs when an employer and employees are unable to agree to terms of a CBA, and grievance arbitration occurs when the parties disagree as to the interpretation of an existing CBA. *City of Philadelphia v. International Association of Firefighters, Local 22*, 999 A.2d 555, 559 n.2 (Pa. 2010).

Courts have been cautious to vacate an arbitration award for an excess of authority. As this Court has stated:

> [O]ur Supreme Court has instructed, what is in excess of the arbitrator's powers under that test is not whether the decision is unwise, manifestly unreasonable, burdens the taxpayer, is against public policy or is an error of law; an arbitrator only exceeds his power if he mandates that an illegal act be carried out or requires a public employer to do that which the employer could not do voluntarily.

*City of Scranton v. E. B. Jermyn Lodge No. 2 of the Fraternal Order of Police*, 903 A.2d 129, 135 (Pa. Cmwlth. 2006).

Here, Employer does not contend that the arbitration award reducing Grievant's suspension from 30 days to 5 days compels it to take unlawful action. Further, the parties do not dispute that the Police Commissioner has discretion to impose discipline on her officers, and that she "is the final authority on all disciplinary matters" under the plain language of the CBA. R.R. at 207a. Because the Police Commissioner could have imposed a five-day suspension on Grievant for his single violation of Directive 4.1, we do not conclude that the arbitrator exceeded his authority by doing the same.

In fact, courts have resisted attempts to review Act 111 arbitration awards that mitigate discipline as an excess of authority. In *Northern Berks Regional*

15

*Police Commission v. Berks County Fraternal Order of Police, Lodge #71* (*Northern Berks Regional Police Commission*), 230 A.3d 1022 (Pa. 2020), our Supreme Court held that an arbitrator's decision to reinstate a police officer and convert his time off to a suspension without back pay did not exceed the arbitrator's authority because reinstatement would not compel the employer to take unlawful action. In *Uwchlan Township*, slip op. at 5, our Court upheld an arbitrator's decision to reduce a police officer's discipline from reinstatement to a one-year suspension, when the employer could have voluntarily imposed that discipline pursuant to the discipline manual made part of the CBA. In these cases, the arbitrators were asked to determine if the employer had just cause to discipline the grievant, and if not, what is the appropriate remedy that should be imposed.

In both *Northern Berks Regional Police Commission* and *Uwchlan Township*, the arbitrators determined that the employers lacked just cause to impose their recommended discipline and reduced the penalties, and the courts declined to find that the arbitrators exceeded their authority by doing so. Here, the same question was posed to the arbitrator, who found that Employer lacked just cause to discipline Grievant for repeated violations of Directive 4.1, but found just cause to discipline Grievant for a single, admitted violation of Directive 4.1. We decline to review the arbitration award here as an excess of the arbitrator's authority as in *Northern Berks Regional Police Commission*, *Uwchlan Township*, and similar cases.

We further conclude that the trial court did not err when it remanded the matter to remove the parenthetical references to Section 5-§011-10 of the Disciplinary Code, but left the five-day suspension in place. The trial court directed that the form of the arbitration award be modified to address the objections made by Employer's counsel at oral argument. Employer cannot now successfully argue that

16

the trial court erred by making the correction that it agreed was at issue in its petition to vacate. We agree with the trial court that, in the context of the arbitration award, the five-day suspension imposed was not untethered to the disciplinary charge that Employer brought forth, but was directly tied to Grievant's single, but not repeated, violation of Directive 4.1 for improperly using his cell phone to document crime scenes.

Accordingly, we hold that the arbitrator did not exceed his authority under the applicable narrow certiorari scope of review, and we affirm the trial court's order.

_____
MICHAEL H. WOJCIK, Judge


Judge Covey did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia,            :

                             :

                Appellant  :

                             :

         v.              :  No. 1243 C.D. 2021

                             :

Fraternal Order of Police,   :

Lodge #5                  :

# **O R D E R**

AND NOW, this 28th day of June, 2023, the order of the Court of Common Pleas of Philadelphia County dated October 6, 2021, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge